(855 P.2d 979)
No. 68,101

STATE OF KANSAS, *Appellee*, v. FRANCISCO MONTANO, *Appellant*.

Opinion filed July 2, 1993.

*M. Kristine Paredes,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for the appellant.

*Kerwin L. Spencer,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before LARSON, P.J., LEWIS, J., and JOHN O. SANDERSON, District Judge, assigned.

LEWIS, J.: The defendant appeals from his conviction of attempted second-degree murder. We have carefully considered the defendant's specifications of error. We find no reversible error, and we affirm.

The defendant was born and raised in Cuba. At the time of the events which led to his arrest and conviction, he had been in the United States for approximately 11 years. His primary language was Spanish, although he spoke and understood English.

On the date in question, the defendant and two of his friends had been drinking for some period of time. They apparently consumed a fairly large quantity of beer and whiskey. One of the trio, who was called Speedy, apparently became quite intoxicated during the course of the evening. The defendant consumed beer and other alcoholic beverages on a steady basis from about 4 p.m. to the time of the altercation but testified that at no time was he intoxicated.

Ultimately, the defendant and his friends ended up at a bar called "The Lounge." At this establishment, the parties continued to consume beer chased by shots of whiskey. At about midnight, the defendant went home to get more money and then returned to The Lounge.

At approximately 1 to 1:30 a.m., Pedro Don Avina was having an argument with his wife via telephone. Avina was at The Lounge and his wife was at home.

The record indicates that there had been a history of bad blood between the defendant and Avina, apparently stemming from an altercation at some time in the past. It is uncertain as to what exactly happened on the night in question, but Avina and the defendant became entangled, one grabbed the other, one struck the other, etc. Ultimately, the defendant removed a .357 magnum revolver from his waistband and shot Avina no fewer than five times.

Avina survived the ordeal and was transported by ambulance to the hospital, where he was treated for his wounds.

In the meantime, the defendant left The Lounge area and returned to his home on foot. He advised his female housemate that he had shot someone and then proceeded to attempt to burn his clothing, an ammunition box, and a holster. In addition to attempting to burn these items, the defendant hid his handgun in a tree.

Avina identified his assailant as the defendant. Thus, in due time, the police descended on the defendant's home seeking to arrest him for shooting Avina. The police arrested the defendant, who signed a consent to allow a search of his residence. That search revealed partially burned clothing and a partially melted ammunition box but no weapon. The defendant was then taken to police headquarters and *Mirandized*. He waived his *Miranda* rights and denied any involvement in the shooting.

Later, the police obtained a search warrant to search the defendant's home and its curtilage. This search led to the seizure of the weapon used in the shooting of Avina, which the police found hidden in a tree.

At the time of trial, the defendant testified and changed his story, admitting that he had shot Avina but insisting that he had done it in self-defense.

Further facts will be developed as necessary in this opinion.

## K.S.A. 75-4351

K.S.A. 75-4351 requires the appointment of an interpreter under certain circumstances for a person whose primary language is not English.

"A qualified interpreter shall be appointed in the following cases for persons whose primary language is one other than English, or who are deaf

or mute or both: (a) In any grand jury proceeding, when such person is called as a witness;

"(b) in any court proceeding involving such person and such proceeding may result in the confinement of such person or the imposition of a penal sanction against such person;

"(c) in any civil proceeding, whether such person is the plaintiff, defendant or witness in such action;

"(d) in any proceeding before a board, commission, agency, or licensing authority of the state or any of its political subdivisions, when such person is the principal party in interest;

"(e) when such person is arrested for an alleged violation of a criminal law of the state or any city ordinance. Such appointment shall be made prior to any attempt to interrogate or take a statement from such persons."

The defendant filed a motion seeking an interpreter under this statute. The trial court conducted a hearing on the motion and, in the process, heard two witnesses testify on the ability of the defendant to understand and converse in English:

(1) Tracy Heath, a Wellington police officer, testified that he had contact with the defendant through previous police business and that he and the defendant spoke only English but that the defendant had an accent. Heath testified that he could understand the defendant and the defendant appeared to have no trouble understanding Heath.

(2) Gail White is the defendant's live-in girlfriend. She testified that she had lived with the defendant for 10 months before he was arrested and that she and the defendant spoke only English. She stated that the defendant understood English better than he spoke it and that, although she had trouble understanding him, he had no difficulty understanding her. White testified that she did not speak Spanish and could not converse with the defendant in Spanish.

At the conclusion of the hearing, the trial court concluded that the defendant's primary language was not English. The court then appointed an interpreter to assist the defendant and his counsel in preparation for trial and at trial.

The defendant raises a number of issues concerning the effect of K.S.A. 75-4351 on several aspects of his arrest and trial.

Prior to considering the specific allegations made by the defendant, we should consider the scope and effect of K.S.A. 75-4351 as interpreted by our Supreme Court. In *State v. Zuniga,*

237 Kan. 788, 791-92, 703 P.2d 805 (1985), our Supreme Court interpreted the statute as follows:

"K.S.A. 75-4351 and the sections that follow it provide the machinery for the selection, appointment and compensation of interpreters under various circumstances. They authorize the expenditure of public funds for that purpose. *The statutes do not contain any sanctions for violations thereof. Suppression is a severe sanction, much criticized. While the purpose is to encourage peace officers to follow statutes or constitutional guidelines, it may prevent otherwise proper evidence from being introduced in the case at hand.*

"*There is no question here but that the statute was not complied with, and the trial court so found.* When the statement was challenged, the trial court held a *Jackson v. Denno* hearing, out of the presence of the jury, to determine the admissibility of the statement. There was evidence that the defendant, a native of Mexico, had been in this country seven or eight years. He spoke English to the victim. He apparently had no difficulty in understanding the speech of the officers and the directions given to him by them at the time of his arrest. Detective Clark first filled out a personal history sheet. All of the conversation was in English. Defendant never indicated that he could not understand. Both the arresting officers and Detective Clark read a statement of the *Miranda* rights to the defendant, and he appeared to understand those. When Detective Clark first questioned the defendant about the alleged rape, he denied that he had had intercourse with the victim. Later, he admitted that they had had intercourse, but stated that it was with her consent. Detective Clark wrote the statement out, read it to the defendant, and asked him if he wished to add, delete or change anything, and the defendant responded that he did not. The trial court held that the statement was admissible, finding that it was knowingly and voluntarily made with a knowing and voluntary waiver of the right not to speak.

"The purpose behind K.S.A. 75-4351(e) is to ensure that there is clear communication between one who is in custody and the officers who are questioning him. *The statute does not state a rule of evidence. Whether or not an interpreter is appointed and is present at the taking of the statement, the trial court must still determine whether an in-custody statement was freely, voluntarily and knowingly given, with knowledge of the* Miranda *rights. That determination must be based upon the totality of the circumstances.* . . .

"Here, the trial court no doubt considered the factors enumerated in *Newfield* and in addition considered the defendant's fluency in the English language. The rule guiding our consideration of these matters is set forth in *State v. Brown,* 235 Kan. 688, Syl. ¶ 3, 681 P.2d 1071 (1984). It reads:

'When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely, voluntarily and knowingly given, and admits the statement

into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence.'

"The trial court below conducted a full hearing on the matter and its determination is supported by substantial, competent evidence. We conclude that the trial court did not abuse its discretion or otherwise err in admitting in evidence Zuniga's statement to the officers." (Emphasis added.)

In *State v. Garcia,* 243 Kan. 662, Syl. ¶ 9, 763 P.2d 585 (1988), the court held:

"When an in-custody statement is taken in English from an accused whose primary language is not English, but who also speaks English, *failure of the officers to have an interpreter in attendance. pursuant to K.S.A. 75-4351(e) does not vitiate the statement if it was freely, voluntarily, knowingly, and understandingly made with full knowledge of the* Miranda *rights.*" (Emphasis added.)

See *State v. Nguyen,* 251 Kan. 69, 74-78, 833 P.2d 937 (1992); *State v. Pham,* 234 Kan. 649, 675 P.2d 848 (1984).

From what our Supreme Court has said on the subject, the following can be stated about 75-4351: (1) The statute does not establish a rule of evidence; (2) a failure to comply with the statute is not per se grounds for the suppression of evidence or the abrogation of a waiver of constitutional rights or consent to a search given when an interpreter is not present; (3) there are no legislative or judicial sanctions that are to be applied automatically when the statute is not complied with.

In essence, the fact that 75-4351 was not complied with is only one factor to be considered by the trial court on a motion to suppress evidence. The essential determination by the trial court remains whether the statement, waiver, consent, or other evidence was given or obtained freely, voluntarily, and knowingly. One of the elements involved in this determination is whether the defendant knew and understood the police officer's comments and disclosures. Our standard of review of the trial court's decision under such circumstances is whether that decision is supported by substantial competent evidence.

With those understandings of the statute at hand, we proceed to the specific issues raised by the defendant.

## (A) CONSENT TO SEARCH

The defendant contends that the consent he gave to the police

officers to conduct a search of his home should be set aside because there was no interpreter present when it was given. We first observe that the statute itself does not require that an interpreter be appointed prior to obtaining a consent to search. Accordingly, this factual scenario does not present a per se violation of 75-4351.

The resolution of this issue depends upon whether the consent signed by the defendant was made voluntarily and understandingly. "It is a settled rule of law . . . that the constitutional immunity from unreasonable searches and seizures may be waived by a consent to a search or seizure." *State v. Boyle,* 207 Kan. 833, Syl. ¶ 1, 486 P.2d 849 (1971).

Our standard of review in determining whether the consent to a search and seizure was valid is very limited. "The existence and voluntariness of a consent to search and seizure is a question of fact to be decided in light of attendant circumstances by the trier of facts and will not be overturned on appeal unless clearly erroneous." *State v. Jakeway,* 221 Kan. 142, 146, 558 P.2d 113 (1976).

The trial court conducted a thorough hearing on the question of the defendant's consent. The defendant contends that he did not understand English well enough to know what he was consenting to. However, the evidence supports a finding that he did understand that he had consented to a search of his residence. The evidence indicated the police officers filled out the consent to search form and read it "word for word" to the defendant. There was testimony by the police officers present that, in response to their advisory that they wished to search his residence for a handgun, the defendant stated, " 'I don't own any handguns and I don't have any problem with you looking at all.' " The defendant signed the consent with three police officers affixing their signatures as witnesses.

The trial court held that the defendant's consent was valid and stated: "[I]t's clear that Mr. Montano understood and conversed in English, that he knew what he was doing, and what was going on, and that he freely and voluntarily signed those waivers." We have examined the record and conclude that the trial court's decision on this matter is supported by substantial competent evidence.

Accordingly, we affirm the trial court's holding that the consent to search was valid.

## (B) STATEMENTS BY THE DEFENDANT

The record shows that the defendant waived his *Miranda* rights and made certain statements to the police officer without the presence of an interpreter. As will be noted, the provisions of K.S.A. 75-4351(e) require an interpreter for persons whose primary language is not English before that person is interrogated or makes a statement.

Our Supreme Court has held, as discussed above, that the failure to have an interpreter in attendance does not vitiate a statement given by a defendant if that statement was freely, voluntarily, knowingly, and understandingly made with full knowledge of the defendant's *Miranda* rights.

The trial court conducted a hearing on the voluntariness of the defendant's statement and concluded that the defendant was fully informed of his rights and made a knowing waiver of those rights.

In *State v. Nguyen,* 251 Kan. at 75, the Supreme Court stated the applicable standard of review, as quoted from *State v. Zuniga:*

" ' "When a trial court conducts a full . . . hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely, voluntarily and knowingly given, and admits the statement into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence." ' "

In this case, the trial court held that the defendant's statements were admissible because he had been fully informed of his *Miranda* rights and made a knowing waiver of those rights. This decision is supported by substantial competent evidence and, on the basis of *State v. Zuniga* and *State v. Garcia,* we affirm the decision of the trial court.

## (C) CROSS-EXAMINATION

In the case at hand, the defendant's direct examination was conducted in Spanish with the aid of an interpreter appointed pursuant to 75-4351. At the conclusion of the defendant's direct examination, the State asked for and received permission from the trial court to conduct the cross-examination in English. Cross-examination was then conducted in English with the interpreter present and available to assist the defendant. The trial court

established certain ground rules of cross-examination which provided that either party or the trial court could ask for the interpreter to step in and assist the defendant in giving answers if it was believed necessary.

The defendant argues that the trial court erred in permitting the cross-examination to be conducted in English.

The question at hand appears to be one of first impression in Kansas. Other jurisdictions have held that the use of interpreters is within the trial court's discretion. In *Valladares v. U.S.*, 871 F.2d 1564, 1566 (11th Cir. 1989), the court stated: "Because the proper handling of translation hinges on a variety of factors, including the defendant's knowledge of English and the complexity of the proceedings and testimony, the trial judge, who is in direct contact with the defendant, must be given wide discretion." See *U.S. v. Moya-Gomez*, 860 F.2d 706, 740 (7th Cir. 1988).

We agree with the reasoning of the federal courts and adopt an abuse of discretion standard to be applied in cases of this nature.

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

K.S.A. 75-4351 does not establish a rule of evidence or require the exclusion of evidence simply because the statute is violated. Neither, we conclude, does it require that a trial court order the defendant's testimony to be given exclusively through an interpreter. If the trial court concludes that the defendant's English is sufficiently developed, it may permit portions of the testimony to be given in English with the interpreter present and available to assist. We have examined the record of the defendant's cross-examination in this case, and we cannot say that no reasonable person would have adopted the view taken by the trial court. We see no evidence that the defendant was prejudiced by the trial court's decision. The trial court was in the best position to make a judgment of this nature and we will not second-guess its

handling of the interpreter on the cross-examination of the defendant.

The record indicates the State desired to conduct its cross-examination in English to demonstrate to the jury that the defendant could speak and understand English. This, it believed, was necessary to enable the jury to evaluate the validity of the defendant's consent to search and the waiver of his *Miranda* rights.

There is also considerable evidence in the record to indicate the defendant could speak and understand English. For instance, he apparently had no problem conversing with his live-in girlfriend, who spoke only English. There was other evidence indicating the defendant was conversant in English as well as Spanish. We believe that, under those circumstances, the trial court did not abuse its discretion in permitting cross-examination to be conducted in English. The essential question addressed to the trial court's discretion was whether cross-examination in English would hamper the defendant's ability to communicate his defense to the jury. In this case, the trial court concluded the defendant would not be prejudiced or seriously hampered by the procedure employed. We hold that this conclusion of the trial court was within its sound discretion and is supported by substantial competent evidence and is affirmed.

## VOLUNTARY INTOXICATION

The defendant argues that the trial court erred in failing to instruct the jury on voluntary intoxication. We disagree.

In this case, the defendant was charged with attempted second-degree murder. Voluntary intoxication may be a defense to a specific intent crime. *State v. Keeler,* 238 Kan. 356, 360, 710 P.2d 1279 (1985). The crime of second-degree murder is a specific intent crime. *State v. Hill,* 242 Kan. 68, 83, 744 P.2d 1228 (1987). It follows that attempted second-degree murder is a specific intent crime and that, in a proper case, voluntary intoxication may be a defense to that crime.

The question is whether the evidence in this case required the trial court to instruct on voluntary intoxication.

"A criminal defendant is, of course, entitled to an instruction on his theory of defense if it is supported by any evidence whatever. [Citations

omitted.] On the other hand, there must be evidence which, viewed in the light most favorable to the defendant, would justify a jury finding in accordance with the defendant's theory. [Citations omitted.]" *State v. Seely,* 212 Kan. 195, 197, 510 P.2d 115 (1973).

In cases of voluntary intoxication, "[t]he defendant has the burden of showing that he was so intoxicated that he was robbed of his mental faculties." *State v. Keeler,* 238 Kan. at 360.

In this case, there was certainly evidence that the defendant and his companions consumed significant amounts of beer and whiskey on the day in question. There was testimony from several witnesses that the defendant's companion, "Speedy," was intoxicated. However, there was little evidence to indicate that the defendant himself was intoxicated to any degree, let alone so intoxicated that it robbed him of his mental faculties. In fact, Wendy Johnson, one of the defendant's companions, testified that the defendant was "in pretty good shape" and "didn't seem intoxicated." Jesse Ybarra testified that he observed the defendant playing pool in The Lounge and noticed nothing unusual about his coordination or ability to walk around. The defendant himself testified:

"Q. Did you know what you were doing that night?
"A. Yeah, I know what I do this night.
"Q. You weren't too drunk to know what was going on?
"A. Yeah, I know what going on. I not drunk."

In *State v. Gross,* 221 Kan. 98, 100, 558 P.2d 665 (1976), the defendant claimed the trial court had erred in not giving a voluntary intoxication instruction. The Supreme Court, in holding the failure to give the instruction was not error, commented:

"Moreover, it appears doubtful whether an intoxication instruction was warranted under the evidence. While Miller, Lloyd and defendant all testified that considerable beer had been consumed, the defendant, nevertheless, testified:
'. . . I knew what I was doing that evening and if I had stolen somethin[g] I would remember it. I am sure that I didn't steal anything. I'm sure that I did not break into a car.'
"Everett Miller also testified:
'Jerome did not have nearly as much to drink as did Danny Lloyd. Jerome was not at all that intoxicated.'
"We find no merit in defendant's contention concerning the trial court's refusal to submit an intoxication instruction."

In *State v. Gadelkarim,* 247 Kan. 505, 508, 802 P.2d 507 (1990), the court said:

"Where the crime charged requires specific intent, voluntary intoxication may be relied on as a defense and an instruction thereon is required if there is evidence to support the defense. [Citations omitted.] *It is not error, however, to refuse to give a voluntary intoxication instruction where there is not sufficient evidence to submit the issue of intoxication to the jury.* See *State v. Shehan,* 242 Kan. 127, 131-32, 744 P.2d 824 (1987). Thus, unless evidence is presented to the jury that shows the defendant was intoxicated to the extent his ability to form the requisite intent was impaired, no voluntary intoxication instruction is required. Statements of an accused can negate testimony about consumption of alcohol and thus justify a court's refusal to instruct on voluntary intoxication. *State v. Payton,* 229 Kan. 106, 114, 622 P.2d 651 (1981)." (Emphasis added.)

In *State v. Shehan,* 242 Kan. 127, Syl. ¶ 5, 744 P.2d 824 (1987), the court held:

"To require the giving of an instruction on voluntary intoxication there must be some evidence of intoxication upon which a jury might find that a defendant's mental faculties were impaired to the extent that he was incapable of forming the necessary specific intent required to commit the crime."

In this case, we conclude there was not sufficient evidence to justify the giving of a voluntary intoxication instruction. The defendant himself testified that he was not intoxicated. One of the defendant's companions and other people who had been with him on the evening in question testified that he was not intoxicated. The evidence showed that the defendant had sufficient clearness of mind to return home immediately after the shooting and attempt to burn his clothing and ammunition and to hide his weapon so that the police would have no evidence on which to convict him. The defendant's testimony on the events of the evening in question was clear and concise and certainly does not indicate an individual whose mental faculties were impaired to the extent that he was incapable of forming the necessary specific intent to commit the crime. As the court noted in *State v. Gadelkarim* quoted earlier, the testimony of an accused can negate testimony about consumption of alcohol. We believe that is the case in the instant matter. The defendant's own testimony clearly shows that his mental faculties were not impaired at the time of

the crime. This testimony is supported by the testimony of his friends and companions.

The evidence in this case does not show that the defendant was intoxicated to the extent his ability to form the requisite intent was impaired. We hold the trial court did not err in refusing to give an instruction on voluntary intoxication.

## DISCOVERY

The defendant filed a motion for discovery of the criminal records of witnesses, the defendant's statements, any other evidence favorable to the defendant, and any inducements offered to witnesses for their testimonies. The trial court, upon learning that the State had an open-file policy and would allow the defendant access to that file, ruled that this policy was adequate. The trial court told the State to let the defendant know if anything new came up.

The defendant's girlfriend had written three letters to the prosecutor urging leniency for the defendant. At trial, on rebuttal, the State asked the defendant's girlfriend to look at a line in one of the letters to refresh her memory regarding a statement she had made that the shooting was intentional. The letters were not admitted into evidence but were used only to refresh the memory of the witness. The defendant now insists that the use of these three letters written to the prosecution violated the court's discovery order and should require the reversal of the defendant's conviction.

The defendant did not object to the use of the letters until after a recess to finalize instructions. The trial court ruled it was not a contemporaneous objection. The trial court also stated that even if the objection had been made contemporaneously, it would have been overruled because the letter was merely to refresh the witness' memory.

The failure by the defendant to make a contemporaneous objection is fatal to the argument on appeal. In *State v. 1978 Chevrolet Automobile,* 17 Kan. App. 2d 144, 155-56, 835 P.2d 1376 (1992), we stated:

"The failure of defense counsel to object to the testimony on the grounds now raised appears to be fatal to the claimants' argument. K.S.A. 60-404 states that a verdict or judgment will not be set aside for the reason of

erroneous admission of evidence 'unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.' Further, the appellate courts of this state have repeatedly stated: '[A] matter to which no objection was raised in the trial court is not to be considered on appeal.' *State v. Troy,* 215 Kan. 369, 373, 524 P.2d 1121 (1974)."

The failure of the defendant to make a contemporaneous objection to the use of these three letters prevents him from raising the issue on appeal.

In addition to the failure of the defendant to make a contemporaneous objection, we note that the letters complained of were not in the category of discovery the defendant requested. They were not subject to the trial court's order of continuing discovery. When a document is not subject to a discovery order, the State is only obligated to disclose it if it contains exculpatory evidence. *State v. Nguyen,* 251 Kan. at 81. The letters did not contain exculpatory evidence. There is no error in the trial court's handling of the letters written by the defendant's girlfriend to the prosecution.

## PROSECUTORIAL MISCONDUCT

During closing argument, the prosecutor made the following statement:

"You are the last link in a chain of justice. It's for you to say whether or not a person can shoot another person five times in the City of Wellington and whether or not there can be reasonable doubt as to whether or not he intended to kill him or not. I submit that in the City of Wellington if you shoot someone five times with a .357 magnum there's no other reason but that you were intending to kill him."

The defendant argues that this statement constitutes prosecutorial misconduct and that it prejudiced his right to a fair trial and that we should reverse his conviction as a result. We disagree.

The fact is, there was no objection made by the defendant to the prosecutor's comment set forth above. It is raised first on appeal. This court will not address issues raised for the first time on appeal. *1978 Chevrolet Automobile,* 17 Kan. App. 2d at 155-56. There must be an objection at the trial court level. *State v. Crabtree,* 248 Kan. 33, 37, 805 P.2d 1 (1991). The failure of the defendant to object to the prosecutor's statement as outlined above precludes its consideration on appeal.

The prosecutor, also on closing argument, made the following statement: "Now, if you think that Pedro Don Avina was lying when he was here in court, then you just find this defendant not guilty and stop by my office and when you're done and say that Donnie Avina, he lied on the witness stand." This remark was objected to by the defendant, and the trial court sustained the objection. The court, however, did not admonish the jury to disregard the comment outlined above.

The failure of the trial court to admonish the jury to disregard the prosecutor's statement under the circumstances shown was not prejudicial error. " 'Improper remarks made in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and deny him a fair trial.' " *State v. McKessor*, 246 Kan. 1, 13, 785 P.2d 1332, *cert. denied* 495 U.S. 937 (1990). The comment was obviously improper because the trial court sustained the defendant's objection to that comment. However, it was not so gross and flagrant as to prejudice the jury and to deny the defendant a fair trial. We hold that the comments made by the prosecutor, while improper, were not such as to require a reversal of the defendant's conviction.

Neither do we consider the cumulative effect of the two comments made to be such that the defendant's conviction must be reversed. The defendant, in his argument of cumulative effect, relies on *State v. Henderson*, 226 Kan. 726, 738, 603 P.2d 613 (1979). In that case, the Supreme Court found reversible error because three prejudicial comments were made during closing argument: "comment on the accused's failure to testify, argument that error in conviction could be cured on appeal, and statement of personal belief in defendant's guilt." We certainly agree with our Supreme Court that the comments made in *State v. Henderson* are such that they would require reversal of a defendant's conviction. The comments made in the instant matter are not such, in our judgment, that they prejudiced the defendant and denied him a fair trial.

The defendant argues that this case is similar to the recent Supreme Court decision in *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993). We have read the Supreme Court's decision in *Ruff* and believe that the defendant's reliance upon it is misguided.

The prosecutor in *Ruff* asked the jury to send a message to the community that the defendant's alleged conduct would not be tolerated. No such request was made of the jury in the instant matter. In addition, in *Ruff*, the defendant objected to the comments, and the trial court failed either to sustain the objection or instruct the jury to disregard the improper statement. In this case, the trial court did sustain the objection, although it did not admonish the jury to disregard the prosecutor's argument.

We have carefully reviewed *Ruff* and find that it does not require a reversal of the defendant's conviction.

Affirmed.