STATE of Minnesota, Respondent,

v.

Franco Flores MARIN, Appellant.

No. C2-95-277.

Court of Appeals of Minnesota.

Jan. 2, 1996.

Review Denied Feb. 27, 1996.

---

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., J. Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Sharon E. Jacks, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SHORT, P.J., and RANDALL and PETERSON, JJ.

## OPINION

SHORT, Judge.

A jury convicted Franco Flores Marin of one count of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342, subd. 1 and one count of kidnapping in violation of Minn.Stat. § 609.25, subd. 1. On appeal, Marin argues (1) the trial court erred in admitting statements made without the aid of an interpreter and (2) the evidence is insufficient to support his convictions.

## FACTS

In the late evening of July 18, 1994, Y.S., a minor, was returning home from work. While she waited at a bus stop, Marin drove up, apparently to use the nearby pay phone. He noticed Y.S. and asked if she remembered him. Y.S. told him that she did not, but agreed to take his phone number so she could leave. Y.S. then chose to walk home rather than wait for the next bus. Shortly thereafter, a man grabbed her from behind, dragged her to a dark area in back of a library, and raped her. Y.S. did not get a close look at her assailant. When Y.S. arrived home, upset, disheveled and crying, her mother called the police.

A few days later, Y.S. realized the man she talked to at the bus stop resided at the apartment complex where she had lived previously. Based on this information and a check stub found in Y.S.'s bag, the police arrested Marin at the restaurant where he worked and brought him to the Richfield Police Department.

At the police station, two officers questioned Marin in a tape-recorded session. Marin is a native of Mexico and speaks Spanish, but has lived in the United States for approximately seven years and in the Twin Cities for three years. Before interviewing him, the officers advised Marin of his *Miranda* rights. When first asked if he understood his right to remain silent, Marin responded, "A little bit." The officer again stated, "You do have the right to remain silent," and Marin replied, "I don't understand you." The other officer then told Marin that he did not have to talk to them. This time, Marin said, "Me, I want—I want to tell the truth." He responded, "okay," when the officer asked if he understood he could say he did not want to talk to them and then stated he understood. When further asked if he understood that everything he said could be used against him, Marin replied, "Yeah, I—everything what I told you." One officer also informed Marin he had the right to a lawyer. Marin simply responded, "Wait, I don't need a lawyer so I—I don't know—." When again asked if he understood his rights, Marin said, "No"; he did not understand if he needed a lawyer. Marin then acknowledged understanding his right to have one appointed. The next time an officer asked if he understood his rights, Marin replied, "Yeah."

The officers proceeded to question Marin in English. Marin began by spelling his name, saying "F—it's hard for me because * * * " The officer said, "that's fine," and Marin continued spelling his name. When asked what he did after work on July 18, Marin responded, "Okay. I start day to come, ah, ten, off work." The other officer noted he was not fully understanding Marin at that

point. Marin then said he saw Y.S. at the bus stop, but said "no" when one officer tried to confirm this and then immediately said yes, he knew someone there. At another point, Marin stated he did not understand when an officer wanted to know Y.S.'s last name. The officer simply continued questioning Marin about the events rather than repeat his question. Marin also said he did not speak English very well. Later, one officer asked if he wore a condom during the assault. Marin replied, "No. * * * But I mean you know I work real hard to, I don't drink, I don't smoke, I don't drugs or." When an officer told him he would show Marin was lying, Marin said, "Yeah, I, I, I, want to do it, do you guys want to bring her here?"

During the interrogation, Marin admitted seeing Y.S. and approaching her at the bus stop. However, he stated he offered Y.S. a ride home and she willingly left with him. According to Marin, they drove to a parking lot, began kissing, and eventually had consensual sex.

After a Rasmussen hearing, the trial court found Marin voluntarily, knowingly, and intelligently waived his rights and admitted the statements at trial. The trial court appointed an interpreter for Marin's use at trial.

## ISSUE

Did the trial court err in concluding Marin voluntarily, knowingly, and intelligently waived his *Miranda* rights and in admitting his statements, which were made without an interpreter?

## ANALYSIS

■ Law enforcement officials must provide an interpreter before interrogating or taking a statement from a person handicapped in communication. Minn.Stat. § 611.32, subd. 2 (1994). A person is handicapped in communication if he or she cannot understand legal proceedings because of a difficulty speaking or comprehending English. Minn.Stat. § 611.31 (1994). Marin argues the police officers violated Minn.Stat. § 611.32, subd. 2, and that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights.

■ A violation of the interpreter statutes does not necessarily require exclusion of a defendant's statements at trial. *State v. Mitjans*, 408 N.W.2d 824, 829–31 (Minn.1987) (finding the legislature did not create a new constitutional right or intend to exclude all statements taken in violation of Minn.Stat. §§ 611.30–.34 (1986), refusing to judicially adopt such a rule, and affirming the admission at trial of statements made in violation of Minn.Stat. § 611.32, subd. 2, which requires procurement of a "qualified" interpreter); *see also State v. Vu*, 339 N.W.2d 892, 897–98 (Minn.1983) (affirming the trial court's admission of a statement made to police despite the defendant's assertion that he could not validly waive his *Miranda* rights because of claimed language difficulties). We are asked to decide whether the Richfield police officers violated Minn.Stat. § 611.32, subd. 2 and, if so, whether the violation requires exclusion of Marin's statements.

The constitutional rights of individuals handicapped in communication "cannot be fully protected unless qualified interpreters are available to assist them in legal proceedings." Minn.Stat. § 611.30 (1994). A suspect who lacks an understanding of the legal proceedings surrounding his or her detainment cannot make intelligent choices regarding the exercise or waiver of fundamental constitutional rights. *Cf. Ton v. State*, 110 Nev. 970, 878 P.2d 986, 987 (1994) (holding a language-impaired defendant enjoys a due process right to the aid of an interpreter at all crucial stages of the criminal process, which is necessary to a meaningful exercise of the defendant's constitutional rights).

Immediately upon questioning Marin, the police officers realized he had difficulty speaking and understanding English. First, Marin clearly indicated he did not understand all of his rights. Second, the police officers had to restate and describe Marin's rights several times because of this lack of understanding. And third, Marin stated he understood his rights only after he was asked several times. A careful review of the transcript demonstrates Marin's misunderstandings continued throughout the interrogation,

and he provided several inappropriate answers to the officers' questions. Although a staff interpreter was available at the station that evening and assisted one officer in calling Marin's home, the officers never offered Marin the aid of the interpreter. Under these circumstances, the police officers violated Minn.Stat. § 611.32, subd. 2 by failing to make available to Marin an interpreter to assist him in understanding his rights and responding to their questions.

■ Although the officers violated Minn.Stat. § 611.32, subd. 2, Marin's statements are admissible, provided he validly waived his constitutional rights. *See State v. Zuniga,* 237 Kan. 788, 703 P.2d 805, 808 (1985) (holding a violation of the Kansas interpreter's statute requiring appointment of an interpreter before interrogating a person whose primary language is not English, results in suppression of a statement only if it was not freely, voluntarily, and knowingly given); *State v. Montano,* 18 Kan.App.2d 502, 855 P.2d 979, 985 (1993) (same), *review denied* (Kan. Sept. 29, 1993); *see also Vu,* 339 N.W.2d at 897–98 (considering whether the defendant knowingly and intelligently waived his *Miranda* rights and finding he understood them despite his assertion that he could not sufficiently comprehend English to execute a valid waiver). A state may not introduce a defendant's in-custody statements absent the defendant's voluntary, knowing, and intelligent waiver of his or her constitutional rights. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Before validly waiving *Miranda* rights, a suspect must be fully advised of the scope of the Fifth Amendment's privilege against self-incrimination and the admissibility of statements made pursuant to a waiver of that right. *Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 857–58, 93 L.Ed.2d 954 (1987).

■ We independently review whether the state established by a preponderance of the evidence that a defendant validly waived his or her constitutional rights. *State v. Williams,* 535 N.W.2d 277, 286 (Minn.1995). Whether a statement was voluntarily given depends on a subjective inquiry into the totality of the circumstances. *State v. Slowin-*

*ski,* 450 N.W.2d 107, 111 (Minn.1990); *see also Vu,* 339 N.W.2d at 897–98 (looking to the totality of the circumstances if evidence suggests a waiver of constitutional rights was not knowing and intelligent). Relevant factors include the defendant's experience and ability to comprehend. *State v. Jungbauer,* 348 N.W.2d 344, 346 (Minn.1984).

Marin apparently had no previous contact with the justice system, other than a court appearance for driving without insurance. Although he eventually waived his rights, Marin stated several times that he did not understand them. Marin had problems expressing himself and the officers had difficulty understanding him. Given these facts, Marin did not voluntarily, knowingly, and intelligently waive his constitutional rights. *See State v. Perez,* 404 N.W.2d 834, 839 (Minn.App.1987) (holding the defendant validly waived his rights despite an alleged language barrier because he never indicated "*in any way* " that he did not understand English) (emphasis added), *review denied* (Minn. May 20, 1987); *see also State v. Garcia,* 243 Kan. 662, 763 P.2d 585, 595–96 (1988) (finding the evidence, including testimony that the police officers had no difficulty communicating with the defendant, supported admission of the defendant's statements), *overruled in part on other grounds by State v. Grissom,* 251 Kan. 851, 840 P.2d 1142, 1171 (1992).

■ An invalid waiver of one's constitutional rights requires reversal and remand for a new trial if admission of the resulting statements does not constitute harmless error. *Chapman v. California,* 386 U.S. 18, 20–22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) (requiring reversal of some constitutional errors only if they were not harmless beyond a reasonable doubt); *see also State v. Warndahl,* 436 N.W.2d 770, 776 (Minn.1989) (applying harmless error analysis after finding trial court improperly admitted the defendant's statements made in violation of his right to counsel). Marin's admission that he had sexual relations with Y.S. on July 18 largely eliminated the issue of identity at his trial. Because the conviction rested mainly on Y.S.'s testimony and Marin's statements to the police, we cannot conclude, beyond a reasonable doubt, that the admission of Ma-

rin's statements did not substantially or significantly affect the verdict. *See State v. Forcier*, 420 N.W.2d 884, 887 (Minn.1988) (requiring the court's satisfaction beyond a reasonable doubt that admission of a statement "did not have a *substantial or significant* impact on the verdict"); *State v. Peterson*, 533 N.W.2d 87, 90–91 (Minn.App.1995) (finding error involving a critical identification issue was not harmless). Because it rises to the level of prejudicial constitutional error, the state's violation of Minn.Stat. § 611.32, subd. 2 requires reversal and remand for a new trial. Under these circumstances, we need not address Marin's argument regarding the sufficiency of the evidence.

## DECISION

The police officers violated Minn.Stat. § 611.32, subd. 2 by failing to provide Marin with an interpreter during his interrogation. Under the circumstances of this case, Marin's waiver of his constitutional rights was not voluntary, knowing, and intelligent. Consequently, the trial court erred in admitting his statements at trial. Because suppression of his statements would have made the assailant's identity a contested issue, we conclude the error was not harmless beyond a reasonable doubt.

**Reversed and remanded.**