(905 P.2d 697)

No. 72,521

RICHARD DICKEY, for and on behalf of the Heirs-at-Law of NANCY DICKEY, Deceased, and RICHARD DICKEY, as Administrator of the Estate of NANCY DICKEY, Deceased, *Appellee/Cross-Appellant*, v. TED W. DAUGHETY, M.D., *Appellant/Cross-Appellee.*

Opinion filed November 9, 1995.

*Evelyn Zabel Wilson,* of Wright, Henson, Somers, Sebelius, Clark & Baker, L.L.P., of Topeka, for the appellant.

*Kevin L. Diehl,* of Eugene B. Ralston & Associates, of Topeka, for the appellee.

Before LEWIS, P.J., PIERRON, J., and JAMES W. PADDOCK, District Judge Retired, assigned.

PADDOCK, J.: This is a loss of chance of recovery wrongful death action. Ted W. Daughety, M.D., appeals from the district court's calculation of damages after a jury verdict. Richard Dickey cross-appeals the district court's reduction of damages by the percent of lost chance determined by the jury.

The facts will be briefly stated and are not disputed by the parties.

On June 3, 1990, Nancy Dickey was taken by ambulance to a hospital, complaining of severe respiratory distress, which developed into Adult Respiratory Distress Syndrome. She was placed under the care of Dr. Daughety, a pulmonologist.

On July 30, 1990, while attempting to replace a chest tube, Dr. Daughety lacerated Nancy's pulmonary artery. Nancy went into cardiac arrest and died within minutes.

Richard Dickey filed a wrongful death action on behalf of Nancy's heirs-at-law. Richard also brought a survival action as the administrator of Nancy's estate.

The matter was tried to a jury in December 1993. The jury found that Nancy had an appreciable chance of survival before the laceration of her pulmonary artery with no chance of survival after the laceration of the artery. The jury found Nancy had a 30% chance of survival. The jury found Dr. Daughety 100% at fault.

On the survival cause of action, the jury awarded Nancy's estate $10,000 as reasonable medical expenses while awarding nothing for pain, suffering, and mental anguish. On the wrongful death cause of action, the jury awarded $114,000 in pecuniary damages and $270,000 in nonpecuniary damages.

The district court accepted the verdict. The district court multiplied the jury's award of damages by the percent of lost chance of survival and awarded damages of $118,200 to the plaintiff.

This appeal followed.

This case involves the calculation of nonpecuniary damages in a loss of chance medical malpractice action.

K.S.A. 60-1903(a) places a cap of $100,000 on nonpecuniary damages in a wrongful death action. The specific issue is whether nonpecuniary damages are to be reduced by the percent of lost chance before or after the statutory cap on such damages is applied. The defendant argues that the percent of lost chance should be applied after the application of the statutory cap where nonpecuniary damages exceed $100,000. The plaintiff argues the contrary.

This is an issue of first impression in Kansas, and our research has revealed no other jurisdictions which have addressed the issue.

The following charts illustrate the practical effect in this case of either approach:

| Illustration 1: Damages calculated applying reduction for loss of chance before statutory cap on damages. | | |
|---|---|---|
| | Damages determined by the jury | Reduction by percent of lost chance (30%) |
| Total award of pecuniary damages | $124,000 | $ 37,200 |
| Total award of nonpecuniary damages | $270,000 | $ 81,000 |
| Total | $394,000 | $118,200 |
| **Total award** | | **$118,200** |

| Illustration 2: Damages calculated applying statutory cap on damages before applying reduction for loss of chance. | | | |
|---|---|---|---|
| | Damages determined by the jury | Application of statutory cap on nonpecuniary damages | Reduction by percent of lost chance (30%) |
| Total award of pecuniary damages | $124,000 | $124,000 | $ 37,200 |
| Total award of nonpecuniary damages | $270,000 | $100,000 | $ 30,000 |
| Total | $394,000 | $224,000 | $ 67,200 |
| **Total award** | | | **$ 67,200** |

## K.S.A. 60-1903 provides in pertinent part:

"(a) In any wrongful death action, the court or jury may award such damages as are found to be fair and just under all the facts and circumstances, but the damages, other than pecuniary loss sustained by an heir at law, cannot exceed in the aggregate the sum of $100,000 and costs.

"(b) If a wrongful death action is to a jury, the court shall not instruct the jury on the monetary limitation imposed by subsection (a) upon recovery of damages for nonpecuniary loss. If the jury verdict results in an award of damages for nonpecuniary loss which, after deduction of any amounts pursuant to K.S.A. 60-258a and amendments thereto, exceeds the limitation of subsection (a), the court shall enter judgment for damages of $100,000 for nonpecuniary loss."

Defendant, in support of his argument, relies mainly upon the language used by the Supreme Court in *Delaney v. Cade*, 255 Kan. 199, 218, 873 P.2d 175 (1994): "Under the proportional damage approach, the amount recoverable equals the total sum of damages *ordinarily recovered* for the underlying injury or death multiplied by the percent of lost chance." (Emphasis added.) Defendant argues that the damages ordinarily recovered, given the statutory cap on nonpecuniary damages, are different from the damages a plaintiff may be awarded by a court or jury.

Defendant's argument calls for a strict application of the language of the *Delaney* decision. However, a strict application of that language ignores two other statements in the court's decision.

First, when discussing whether the damages should be discounted to reflect the amount attributable to the lost chance, the court defined its use of the term "damages recoverable": "We agree that the damages recoverable should be limited to the amount attributable to the lost or reduced chance itself and not the total damages, which would include those resulting from the preexisting condition." 255 Kan. at 217. A strict application of that language would indicate the damages recoverable would be the actual damages multiplied by the percent of lost chance, not capped damages multiplied by the percent of lost chance.

Second, the *Delaney* court cautioned at the close of its opinion:

"We realize this opinion, coming to the court as a certified question, leaves many issues unanswered and does not provide any bright line rules of simple application. In this new area of law, the courts must be free to consider the various issues on a case-by-case basis and be free to furnish careful guidance to the jury, depending upon the facts of each case." 255 Kan. at 219.

The Supreme Court in *Delaney* did not have before it the specific question of whether the reduction of the damages by the percent of lost chance is to occur before or after application of the cap on nonpecuniary damages. *Delaney* addressed two questions certified by the Tenth Circuit Court of Appeals:

" '1. Does Kansas recognize a cause of action for loss of chance of recovery?

" '2. If so, what are the standards of proof for such a claim?' " 255 Kan. at 201.

Even if we assumed that the *Delaney* court's language carried the interpretation claimed by the defendant, that language would constitute dictum.

"Dictum which goes beyond the points decided in a particular case may be respected but should not control a subsequent case when the precise point is presented, argued and considered by the court."

"The court is not bound by dictum when the subject matter thereof becomes a question squarely presented for decision." *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, Syl. ¶¶ 1, 2, 596 P.2d 446 (1979).

While the Supreme Court considered the proper measure of damages essential to its decision in *Delaney*, the relationship of the statutory cap on nonpecuniary damages was not addressed.

Defendant further claimed, during his oral argument before this court, that the *Delaney* court approved the proportional damage method used by the federal district court in *Boody v. United States*, 706 F. Supp. 1458 (D. Kan. 1989).

Defendant points out that the calculation of damages in *Boody* began with the capped damages, then multiplied that figure by the percent of lost chance. 706 F. Supp. at 1465-66. Defendant is correct as to the *Boody* damage calculation. However, the problem with defendant's argument is that in *Boody*, the beginning point of the calculation was the statutory cap because that is all the plaintiff had requested. There the court stated: "Plaintiff requests the statutory maximum of $100,000 for nonpecuniary loss. K.S.A. 60-1903(a). The court concludes plaintiff's testimony supports a recovery of the statutory maximum of nonpecuniary damages. The court received ample testimony of a strong marriage and extensive care of the couple's children." 706 F. Supp. at 1466. Thus, *Boody*, and our Supreme Court's approval of that case, does not stand for the proposition that the proportional damage approach must begin with the statutory cap where nonpecuniary damages exceed $100,000.

Plaintiff responds to defendant's argument by citing *Bright v. Cargill, Inc.*, 251 Kan. 387, 837 P.2d 348 (1992); *McCart v. Muir*, 230 Kan. 618, 641 P.2d 384 (1982); and *Gann v. Joeckel*, 20 Kan. App. 2d 136, 884 P.2d 451 (1994). Each of these cases held that a statutory cap on damages awarded by the court or jury's award

shall be applied after the defendant's fault is compared with that of all other parties and nonparty tortfeasors. In other words, the reductions for comparative fault are to be made from the award of damages and not from the statutory cap on damages. However, each of these cases relied upon statutory language that dictates such a result. K.S.A. 60-1903(b) provides in part: "If the jury verdict results in an award of damages for nonpecuniary loss which, after deduction of any amounts pursuant to K.S.A. 60-258a and amendments thereto, exceeds the limitation of subsection (a), the court shall enter judgment for damages of $100,000 for nonpecuniary loss." K.S.A. 60-19a01(d) provides that entry of judgment for a capped recovery "shall occur after consideration of comparative negligence principles in K.S.A. 60-258a and amendments thereto."

The result in this case is not controlled by statute. However, we believe the manner in which both the legislature and the Supreme Court have treated reductions for comparative fault is persuasive as to the approach that either would adopt if they were to address the issue before this court.

When explaining the loss of chance theory, the Supreme Court has said:

"The loss of chance of recovery theory basically entails the adoption of a different standard of causation than usually applies in negligence cases. As we said in *Roberson*, 'causation is easier stated than explained.' 235 Kan. at 1013. One authority attempts to explain the theory as follows:

'The "loss of chance" doctrine has emerged over the past decade in response to the traditionally strict standard requiring proof that in reasonable probability the defendant's tortious conduct proximately caused the plaintiff's injury or death. Lost chance is a concept which presents a better method to evaluate the tort victim's diminished chance of survival or recovery when the evidence establishes the plaintiff's possibility of survival or cure is less than probable.

'Application of the lost chance principle in medical malpractice cases often involves circumstances where the plaintiff or patient was already suffering from some disease or disorder at the time the health care malpractice occurred. *Consequently, the loss of chance doctrine serves to fairly compensate the plaintiff for the tortious deprivation of an opportunity to live longer or recover from a physical injury or condition inflicted by the defendant's wrongful act or omission.* In the medical malpractice context, lost chance endeavors to allow a plaintiff to recover for the diminished chances of surviving or recovering from a disease or malady which results from the health

care defendant's malpractice.' (Emphasis added.) Keith, *Loss of Chance: A Modern Proportional Approach to Damages in Texas*, 44 Baylor L. Rev. 759, 760 (1992)." *Delaney v. Cade*, 255 Kan. at 209.

Our Supreme Court has said that the cap on damages in a wrongful death action is not a measure of compensation but a limitation upon recovery.

" 'We are not faced with the question of how the wrongful death statute's limitation interacts procedurally with the comparative negligence statute in this case. [Citations omitted.] It should be noted under our wrongful death statute, the death limitation is *not* a measure of compensation. Instead, it is simply a limitation upon recovery.' " *McCart*, 230 Kan. at 630 (quoting *Kleibrink v. Missouri-Kansas-Texas Railroad Co.*, 224 Kan. 437, 445, 581 P.2d 372 [1978]).

As stated by the district court in this case:

"Clearly, to reduce the award, before reducing the award by 30%, would defeat the policy behind using the lost chance of survival to determine the amount of damages. The purpose of the lost chance of survival formula is to accurately compensate for what was lost due to defendant's negligence. To unnecessarily reduce that amount to a fraction of $100,000.00 would defeat this purpose."

We agree. We hold that in a loss of chance of recovery wrongful death action, if the jury awards nonpecuniary damages in excess of the cap mandated by K.S.A. 60-1903, the trial court shall apply the percent of lost chance to the damage award before applying the cap on nonpecuniary damages.

The district court correctly multiplied the jury's award of nonpecuniary damages by the percent of lost chance to arrive at the amount of nonpecuniary damages recoverable in this case. Because that calculation derived a figure below $100,000, the cap on nonpecuniary damages is not applicable to this case.

On his cross-appeal, plaintiff claims that the jury's award of damages already reflects the percent of lost chance. Thus, plaintiff argues, the district court erred by further reducing the damages by again applying the percent of lost chance.

It is plaintiff's opinion that because the jury was not told to not consider the percent of lost chance of survival when assessing damages, the court should have concluded that the jury reduced its damage award by the percent of lost chance. Although plaintiff claims that he is not objecting to the court's instructions, but rather

is objecting that the trial court misconstrued the jury's award in light of the instructions given, we will examine the instructions given to determine if the jury could reasonably have been misled by them.

Instruction No. 21 stated in part: "Keep in mind that in setting forth damages amounts on your verdict form, you set out the full damage sustained by the plaintiffs for which they seek compensation in this case. I will make any reduction attributable to that party's fault so you should not do so."

Paragraph 6 of the verdict form stated:

"Without considering the percentage of fault found in any of the previous questions determine the amount of damages for the personal injury claims of Nancy Dickey. You should allow such amount of money as will reasonably compensate the Estate of Nancy Dickey, deceased for her injuries and losses resulting from the occurrence in question."

Plaintiff points out that the verdict form in PIK Civil 2d 10.01A (1994 Supp.) for loss of chance cases includes an instruction to the jury: "Without considering your answers under any of the above questions [regarding the percent of lost chance], proceed to determine the damages sustained by ____." Plaintiff did not request that such an instruction be given.

K.S.A. 60-251(b) provides in part:

"No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects and the grounds of his or her objection unless the instruction is clearly erroneous."

"Jury instructions are to be considered together and read as a whole, without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Morris*, 244 Kan. 22, 23, 765 P.2d 1120 (1988)." *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 355, 837 P.2d 330 (1992).

Plaintiff claims "the undisputed evidence was that medical bills were $23,434.29; however the jury awarded $10,000.00 for medical bills. Further, the undisputed evidence was that funeral expenses were $7,480.33 and the jury awarded $4,000.00." From this, plain-

tiff concludes that the jury must have reduced its assessment of damages by the percent of lost chance in rendering its awards. The problem with this argument is that when the percent of lost chance is applied to reduce the medical bills and funeral expenses that plaintiff claims were undisputed, the reduction would equal 43 percent of the medical bills and 54 percent of the funeral expenses rather than the 30 percent loss of chance found by the jury. Plaintiff's argument is not persuasive on the basis of the mathematical calculation above.

Additionally, in support of the claim of "undisputed evidence," plaintiff included in the record on appeal an exhibit which states that Nancy Dickey's medical bills amounted to $23,434.29. Whether this exhibit was disputed cannot be determined from the record on appeal.

Supreme Court Rule 6.02(d) (1995 Kan. Ct. R. Annot. 29-30) states: "The facts stated [in appellant's brief] shall be keyed to the record on appeal so as to make verification reasonably convenient. *Any material statement made without such a reference may be presumed to be without support in the record.*" (Emphasis added.) This rule has been applied as written. See *Zenda Grain & Supply Co. v. Farmland Industries, Inc.*, 20 Kan. App. 2d 728, 746, 894 P.2d 881, *rev. denied* 257 Kan. 1097 (1995); *McCaffree Financial Corp. v. Nunnick*, 18 Kan. App. 2d 40, 48, 847 P.2d 1321 (1993).

Further, plaintiff has failed to include a transcript of the trial in the record on appeal. "An appellant has the burden to designate a record sufficient to establish the claimed error. Without an adequate record, an appellant's claim of alleged error fails." *Smith v. Printup*, 254 Kan. 315, Syl. ¶ 14, 866 P.2d. 985 (1993). Absent the trial transcript, it is impossible to ascertain what evidence of medical and funeral expenses was offered and whether it was disputed.

Defendant responds that when the jury awarded 43% of Nancy's medical bills and 53% of her funeral expenses, it is logical to conclude that the jury awarded only those medical and funeral expenses it considered reasonable. We agree.

The instructions properly and fairly stated the law in such a manner that the jury could not reasonably have been misled by them. The instructions given do not require a conclusion that the jury

rendered its damages award after applying the percent of lost chance.

Affirmed.