No. 72,521

RICHARD DICKEY, for and on the behalf of the heirs-at-law of NANCY DICKEY, Deceased, and RICHARD DICKEY, as administrator of the estate of NANCY DICKEY, Deceased, *Appellee/Cross-Appellant*, v. TED W. DAUGHETY, M.D., *Appellant/Cross-Appellee.*

(917 P.2d 889)

Opinion filed May 31, 1996.

*Evelyn Zabel Wilson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, of Topeka, argued the cause and was on the briefs for appellant.

*Kevin L. Diehl*, of Eugene B. Ralston & Associates, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is a wrongful death action based upon a loss of chance of survival because of medical malpractice. We granted the defendant's petition for review on a single issue involving the calculation of nonpecuniary damages. For the reasons set forth below, we agree with the trial court and the Court of Appeals' conclusion that in such an action nonpecuniary damages awarded by the jury

are to be multiplied by the percentage of lost chance of survival before application of the statutory cap in K.S.A. 60-1903.

## Facts and Procedural History

On July 3, 1990, Nancy L. Dickey was taken by ambulance to St. Francis Hospital complaining of respiratory distress. Her condition deteriorated and she developed Adult Respiratory Distress Syndrome. She was placed under the care of the defendant, Dr. Ted Daughety, a pulmonologist. On July 30, 1990, Daughety, while attempting to replace a chest tube, accidentally lacerated Dickey's pulmonary artery, causing her death. The decedent's heirs at law brought this wrongful death action against Daughety for malpractice.

The jury determined that Dickey had an appreciable chance of survival before the laceration of her pulmonary artery. It also determined that had she been given proper medical care, that chance would have been 30%. The jury further found that Dickey had no chance of survival under the medical care that she actually received and that Daughety was 100% at fault.

Based upon trial evidence, the jury awarded the heirs pecuniary damages totalling $114,000 and nonpecuniary damages totalling $270,000. The trial court multiplied the damages by 30%, the percentage of lost chance of survival, arriving at a figure of $37,200 for pecuniary damages and $81,000 for nonpecuniary damages, for total damages of $118,000. Daughety appealed, contending that the total nonpecuniary damages should have been $30,000 instead of $81,000. He claimed that the $100,000 cap for nonpecuniary damages under K.S.A. 60-1903(a) should be applied before the nonpecuniary damage award of $270,000 is multiplied by the percentage of lost chance.

The Court of Appeals affirmed the trial court's finding that the nonpecuniary damage award should be multiplied by the percentage of lost chance prior to the application of the statutory cap in K.S.A. 60-1903(a). *Dickey v. Daughety*, 21 Kan. App. 2d 655, 661, 905 P.2d 697 (1995). We granted Daughety's petition for review on the sole issue involving the proper calculation of damages in a

loss of chance case as affected by the statutory cap on nonpecuniary damages found in K.S.A. 60-1903(a).

## Discussion, Analysis, and Resolution

The total amount of nonpecuniary damages awarded by the jury was $270,000. The defendant contends that the trial judge should have fixed nonpecuniary damages at $30,000 using the following method: First, reduce the $270,000 to $100,000, the statutory cap mandated by K.S.A. 60-1903(a); then multiply the $100,000 by the percentage of lost chance of survival, found by the jury to be 30%, for a nonpecuniary damage award of $30,000. The trial court and the Court of Appeals decided that the nonpecuniary damage award of $270,000 should be multiplied by the 30% loss of chance of survival for an award of $81,000 in nonpecuniary damages.

The defendant relies upon our recent decision of *Delaney v. Cade*, 255 Kan. 199, 218, 873 P.2d 175 (1994), to support his contention that the $100,000 cap should be applied first. *Delaney* was a loss of chance of recovery case. It came before this court on certified questions by the United States Court of Appeals for the Tenth Circuit. In *Delaney*, we determined that (1) Kansas does recognize a cause of action for loss of chance of recovery; (2) in such an action, the loss of chance of recovery must be substantial; and (3) "the proper method for calculating damages in a medical malpractice action based upon the loss of a chance for survival . . . is the proportional recovery method as described in *Boody* and by Professor King." 255 Kan. at 218.

A close examination of *Boody v. U.S.*, 706 F. Supp. 1458 (D. Kan. 1989), and Professor Joseph H. King, Jr.'s, article in the Yale Law Review undermine the defendant's reliance upon *Delaney* and his contention that the $100,000 cap on nonpecuniary damages should be applied before the percentage of lost chance is multiplied by total nonpecuniary damages. In his article, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, Professor King describes the proportional recovery method as one where the total damage award is multiplied by the percentage of lost chance. See King, 90 Yale L. J. 1353, 1380-86 (1981). Application of this method under the

facts of our case results in a nonpecuniary damage award of $81,000.

The same result occurs when the rationale of *Boody* is applied to the facts of our case. *Boody* was a loss of chance of survival case which determined that the plaintiff's damages would be calculated by multiplying the total value of the decedent's life by the percentage of life lost due to the physician's negligence. In *Delaney*, we quoted with approval the following language from *Boody*:

"This method is preferable because it apportions damages in direct relation to the harm caused; it neither overcompensates plaintiffs or unfairly burdens defendants with unattributable fault. Second, the percentage method gives juries and judges concrete guidelines on how to measure damages, alleviating the 'pulling out of the hat' problem identified with the [valuation approach]. If the decision maker believes plaintiff's expert(s) on causation, the percentage of chance lost, then it makes the usual finding on the value of a life ($X) and multiplies $X by the percentage of chance lost to arrive at the compensation for the lost chance to survive." 706 F. Supp. at 1465-66.

There is no doubt that the proportional method as contemplated in *Delaney* involves a determination of the total damages multiplied by the percentage of lost chance. Nevertheless, the defendant seizes upon two words in the following sentence from *Delaney* to support his contention that the cap of $100,000 is to be applied before the percentage of loss: "Under the proportional damage approach, the amount recoverable equals the total sum of damages *ordinarily recovered* for the underlying injury or death multiplied by the percent of lost chance." 255 Kan. at 218. (Emphasis added.)

Daughety argues that the amount "ordinarily recovered" in a wrongful death action is not necessarily the amount awarded by the jury. According to Daughety, if a jury awards an amount for nonpecuniary damages over $100,000 in a wrongful death action, the amount recovered is limited to $100,000. Thus, Daughety argues, the amount normally recovered is the amount awarded by the jury but reduced by the statutory cap.

The defendant misses the point of *Delaney*. *Delaney* does not deal with caps under our wrongful death statute K.S.A. 60-1903(a). It deals with the method of calculating damages in a loss of chance case. Our use of the words "ordinarily recovered" relates to total

damages awarded by the finder of fact for the injury or wrongful death. In a loss of chance case, damages awarded by the finder of fact are to be multiplied by the percentage of lost chance to compute actual damages for the loss of chance. If the resulting amount exceeds the $100,000 cap set forth in K.S.A. 60-1903(a), the court "shall enter judgment for damages of $100,000 for nonpecuniary loss." K.S.A. 60-1903(b).

An analysis of the provisions of K.S.A. 60-1903 further supports our determination. K.S.A. 60-1903(a) provides that the damages in a wrongful death case cannot exceed $100,000. The cap has no relationship to actual damages awarded by the finder of fact except to provide a limit on the amount that the plaintiff may be awarded. The cap is by statute a "monetary limitation" not disclosed to the jury. K.S.A. 60-1903 is not a cap on the damages that may be awarded by the jury but rather a cap on the damages that may ultimately be recovered after reductions for comparative fault and loss of chance. The limitation under our wrongful death statute is not a measure of compensation but is simply a limitation upon recovery. *McCart v. Muir*, 230 Kan. 618, 630, 641 P.2d 384 (1982) (quoting *Kleibrink v. Missouri-Kansas-Texas Railroad Co.*, 224 Kan. 437, 445, 581 P.2d 372 [1978]).

The defendant also contends that *Boody* supports his position that caps be applied first before the percentage of chance is determined. In *Boody*, the court determined total damages, including the statutory maximum of $100,000 for nonpecuniary damages, and multiplied the total amount by the percentage of lost chance to find the damage award. 706 F. Supp. at 1466-67. However, in *Boody*, the plaintiff's claim of nonpecuniary damages was limited to the amount of the statutory cap of $100,000. *Boody* did not address the application of the statutory cap. See 706 F. Supp. at 1466. *Boody* offers no support for the defendant's position.

We hold that in a wrongful death action involving a loss of chance of survival, the nonpecuniary damages awarded by the finder of fact are to be multiplied by the percentage of lost chance before the statutory cap in K.S.A. 60-1903(a) is applied. We conclude that the trial court did not err in determining that the total nonpecuniary damages of $270,000 was to be multiplied by the 30% loss of

chance in arriving at $81,000 nonpecuniary damages for the loss of chance of survival.

The result we reach today is not inconsistent with the calculation of damages in cases of comparative negligence. In *Bright v. Cargill, Inc.*, 251 Kan. 387, 417, 837 P.2d 348 (1992), we held that the trial court is to apply comparative fault principles before entering judgment for the amount recoverable under the $250,000 statutory cap on damages for pain and suffering. See also *McCart v. Muir*, 230 Kan. 618 (holding that deductions due to comparative negligence are to be made from nonpecuniary damages before the cap in K.S.A. 60-1903 is considered); *Gann v. Joeckel*, 20 Kan. App. 2d 136, 884 P.2d 451 (1994) (following holdings of *McCart*).

Daughety argues that the above cases are distinguishable because they were decided based on the application of K.S.A. 60-1903(b), which expressly states:

"If the jury verdict results in an award of damages for nonpecuniary loss which, after deduction of any amounts pursuant to [the statute on comparative negligence], exceeds the limitation of subsection (a), the court shall enter judgment for damages of $100,000 for nonpecuniary loss."

However, we note that *McCart v. Muir*, which concerned application of K.S.A. 60-1903, was decided prior to the 1984 enactment of K.S.A. 60-1903(b). See L. 1984, ch. 214, § 1. Thus, the statute at issue in *McCart v. Muir* did not expressly compel this court to consider comparative negligence before applying the cap. Instead, we determined that such consideration was the correct result, relying upon the rationale advanced in *Benton v. Union Pac. R. Co.*, 430 F. Supp. 1380 (D. Kan. 1977). 230 Kan. at 630. *Benton* considered the effect of the comparative negligence statute on the statutory cap in K.S.A. 60-1903 and stated:

"Accordingly, when the comparative negligence statute is called into play, we cannot say the wrongful death limitation was intended to be the measure of damages sustained. On the other hand, it clearly is a limitation on the amount of damages recoverable. Under all the circumstances we agree with the view expressed in *Olsen* [*v. Hartwig*, 288 Minn. 375, 180 N.W. 2d 870 (1970)], that it is far more equitable to allow the plaintiff the opportunity to recover the statutory maximum than to further reduce her recovery. The injustice of allowing a plaintiff whose decedent was contributorily negligent to perhaps recover as much as a plaintiff whose decedent was not negligent seems slight, compared with the in-

justice of further reducing plaintiff's recovery, when her maximum recovery is already far less than her actual damages." 430 F. Supp. at 1386.

Affirmed.