(1 P.3d 330)

No. 81,373

STATE OF KANSAS, *Appellee*, v. ASIF AMEEN, *Appellant*.

Opinion filed March 10, 2000.

*David H. Moses*, of Case, Moses, Zimmerman & Wilson, P.A., and *Kenneth P. Leyba*, of Curfman, Harris, Rose & Smith, L.L.P., of Wichita, for appellant.

*Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT, P.J., LEWIS, J., and PADDOCK, S.J.

ELLIOTT, J.: Asif Ameen appeals his convictions of one count of securities fraud and four counts of theft.

We affirm in part and reverse in part.

Ameen was employed by Primeline Securities, an investment firm which initiated the purchase of stocks and bonds on behalf of clients. All accounts at Primeline were nondiscretionary accounts, meaning action on a client's account could not be taken without the client's prior consent. Rauscher Pierce Refsnes (RPR), a clearing firm, made the purchases on behalf of Primeline clients and also transferred money on Primeline's request.

Nedal Alagha was a client of Ameen. On four occasions in the spring of 1997, Ameen instructed another Primeline employee to instruct RPR to transfer monies from Alagha's Primeline account to an independent bank account supposedly owned by Cambras Communications Corporation (CCC). In this manner, Ameen caused some $67,000 to be transferred to the CCC account actually owned by Ameen. Ameen then depleted the CCC account; Alagha never gave permission to Ameen to engage in these transactions.

Ameen was charged with securities fraud under K.S.A. 1999 Supp. 17-1253(a)(3), which provides it is unlawful for any person, in connection with the offer, sale, or purchase of any security, to engage in fraudulent or deceitful activities.

Ameen contends he cannot be guilty under this statute because Alagha's account was not a security. We agree.

"Security" is defined broadly and includes investment contracts. K.S.A. 1999 Supp. 17-1252(j). Here, the testimony indicates the account from which funds were transferred contained cash only. There is no testimony that Ameen ordered the sale of Alagha's stocks with the proceeds to go to Ameen's CCC account.

An investment contract has been defined as "an investment of money in a common enterprise with profits to come from the efforts of others." *State ex rel. Owens v. Colby*, 231 Kan. 498, 504, 646 P.2d 1071 (1982). While we have found no Kansas case directly on point, we believe that a case from the Eleventh Circuit is instructive.

In *Gordon v. Terry*, 684 F.2d 736 (11th Cir. 1982), *cert. denied* 459 U.S. 1203 (1983), the court dealt with whether real estate syndicates were securities. The court determined the central question was whether the alleged investment contract was discretionary or nondiscretionary. 684 F.2d at 740-41.

The *Gordon* court concluded a nondiscretionary contract cannot be an investment contract and, therefore, not a security because "[a]n investor who [pursuant to the contract] has the ability to control the profitability of his investment . . . by his own efforts . . . is not dependent upon the managerial skills of others. Thus, . . . arrangements which grant the investors control over

the significant decisions of the enterprise are not securities." 684 F.2d at 741.

We conclude Alagha's account from which the funds were diverted was nondiscretionary and thus, not a security. Based on that conclusion, Ameen's conviction of securities fraud must be reversed. Because of our holding on this issue, we need not address Ameen's other contentions concerning the securities fraud conviction.

Ameen also appeals his convictions of four counts of felony theft under K.S.A. 21-3701, for the unauthorized transfers of funds from Alagha's Primeline account. He contends the trial court erred in failing to instruct on the single larceny theory or doctrine. Ameen did not request such an instruction, so our review is limited to whether the failure to give the instruction was clearly erroneous. See *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

We have determined the single larceny doctrine has been limited to cases allowing the State to charge a series of misdemeanor thefts as one felony theft where it appears the thefts resulted from a single incriminating impulse. See *State v. McClanahan*, 251 Kan. 533, 535-36, 836 P.2d 1164 (1992); *State v. Fox*, 242 Kan. 457, 460-63, 749 P.2d 16 (1988). We hold the doctrine to be inapplicable here where the defendant committed four separate felony thefts.

Further, there is no real possibility the jury would have returned a verdict other than guilty on all four separate counts of thefts. The failure to give the instruction was not clearly erroneous.

Ameen also contends his convictions should be reversed because the State failed to advise him of his rights under the Vienna Convention on Consular Relations. This treaty at Article 36(1)(b) states:

"[I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph." Vienna Convention on Consular Relations, 21 U.S.T. 77, 101, T.I.A.S. No. 6820 (April 24, 1963).

Ameen claims he was not informed of his rights under the treaty. Ameen failed to raise this issue at the trial court and, therefore, no evidentiary basis for the claim was properly established as part of the record on appeal.

Courts dealing with this question have concluded a violation of Article 36(1)(b) will not result in a reversal unless the defendant has shown prejudice. See, *e.g., Faulder v. Johnson,* 81 F.3d 515, 520 (5th Cir.), *cert. denied* 519 U.S. 995 (1996); *Martinez v. State,* 984 P.2d 813, 818-19 (Okla. Crim. 1999).

In the present case, Ameen merely argues that if he had been informed of his rights, the Bangladesh counsel might have been able to retain private counsel to represent him, rather than a public defender. However, Ameen makes no claim the representation afforded him through his appointed counsel was deficient. Ameen's claim is purely speculative and thus fails. Courts should not roam the unfenced fields of speculation. *In re Estate of Wernet,* 226 Kan. 97, 106, 596 P.2d 137 (1979) (quoting *In re Estate of Graves,* 203 Kan. 762, 769, 457 P.2d 71 [1969]).

We do, however, urge state prosecutors to become familiar with the treaty and specifically Article 36. The Vienna Convention on Consular Relations was adopted by 92 nations, including the United States. See Kadish, *Article 36 of the Vienna Convention on Consular Relations: A Search for the Right to Consul,* 18 Mich. J. Int'l Law 565, 568 (1997). State prosecutors should become aware of the treaty's provisions and adhere to them.

Ameen's conviction of securities fraud is reversed; his four convictions of felony theft are affirmed.