(17 P.3d 379)
No. 84,346

STATE OF KANSAS, *Appellèe*, v. SERGIO ROSAS, *Appellant*.

Opinion filed December 22, 2000.

*LaDessa M. de la Cruz*, of Delacruz & Kweli, of Wichita, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before LEWIS, P.J., WAHL, S.J., and PATRICK D. MCANANY, District Judge, assigned.

WAHL, J.: Sergio Rosas appeals the trial court's denial of his motion to suppress evidence from a search and interrogation which led to his conviction for possession of methamphetamine.

On December 13, 1998, Officers Padron and Bray of the Wichita Police Department investigated a complaint of possible drug activity at a residence. The officers observed Rosas leaving the residence and getting into a vehicle, parked with the motor running. Acting on their suspicions, the officers followed Rosas' vehicle as he drove away. Rosas was subsequently stopped for a traffic violation.

Officer Padron approached Rosas and asked him to produce his driver's license. Rosas provided a valid Kansas license designated with a social security number. Padron noticed an open bottle of whiskey on the floorboard of Rosas' vehicle. A records check of Rosas' driver's license revealed he was wanted on a warrant for domestic violence. After taking possession of the bottle of whiskey from the truck, Padron had Rosas step out of the vehicle. According to his testimony, Padron initially patted Rosas down for weapons, but then searched his person with Rosas' consent. Rosas testified he never gave Officer Padron consent to search his person. In any event, Padron found a plastic bag containing methamphetamine in Rosas' boot.

The officers took Rosas into custody and transported him to a branch office of the police department for questioning. The officers gave *Miranda* warnings to Rosas in English, after offering to read them in either English or Spanish. Rosas said that he understood English very well. After *Miranda* was read to him, Rosas made incriminating statements concerning his purchase of the methamphetamine. Rosas was charged with one count of possession of methamphetamine.

Rosas moved to suppress the methamphetamine and all incriminating statements he made during the interrogation. At the suppression hearing, an interpreter assisted Rosas in the proceedings and translated his testimony from Spanish to English. Rosas argued the search and interrogation were illegal because he could not effectively consent or waive *Miranda* due to his difficulties with the English language. In addition, Rosas claimed the search and seizure were tainted because he is a Mexican citizen and because he was entitled to contact his consulate prior to detention by law enforcement. See Vienna Convention on Consular Relations (Vienna Convention), April 24, 1963, Art. 36(1)(b), 21 U.S.T. 77, T.I.A.S. No. 6820.

Officer Padron is bilingual and speaks Spanish fluently. Padron testified he communicated with Rosas in both languages at various times throughout the entire process and Rosas had no problems whatsoever. Both officers testified that Rosas spoke and understood English and communicated with them in a competent manner. Neither officer advised Rosas of a right to contact the Mexican consulate, nor did Rosas request to do so.

The trial court overruled Rosas' motion to suppress. The court found no communication problem existed between Rosas and the officers and, therefore, consent and waiver were effectuated. The trial court also ruled the Vienna Convention did not apply to the issues raised by Rosas. Following the suppression hearing, Rosas was convicted of possession of methamphetamine after a bench trial.

"When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination." *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995). When the facts material to a decision are not in dispute, the question of whether to suppress is a question of law subject to unlimited review. *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998). The factual findings of the trial court are reviewed for substantial competent evidence. *State v. Wonders*, 263 Kan. 582, 588-89, 952 P.2d 1351 (1998).

The only disputed facts in this appeal concern whether Rosas voluntarily consented to the officer's search of his person, and whether Rosas' waiver of *Miranda* was made knowingly without the aid of an interpreter. The trial court's determination on these issues should not be overturned if the factual findings are based on substantial competent evidence. *Wonders*, 263 Kan. at 588-89.

Rosas argues he could not legally consent to a search or legitimately waive his *Miranda* rights because the police officers failed to provide an interpreter as required by K.S.A. 75-4351, which provides in pertinent part:

"A qualified interpreter shall be appointed in the following cases for persons whose primary language is one other than English, . . .

. . . .

"(e) prior to any attempt to interrogate or take a statement from a person who is arrested for an alleged violation of a criminal law of the state or any city ordinance."

Rosas does not challenge the stop, the search, or the subsequent interrogation on any other grounds in his brief. An issue which is not briefed is deemed abandoned. *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999). Therefore, Rosas' challenge to admitting the seized methamphetamine and his statements into evidence concerns his alleged inability to understand his rights without the assistance of an interpreter due to a language barrier problem and his argument regarding application of the Vienna Convention, Article 36(1)(b).

K.S.A. 75-4351 does not require an interpreter to be appointed prior to obtaining a consent to search. *State v. Montano*, 18 Kan. App. 2d 502, 508, 855 P.2d 979, *rev. denied* 253 Kan. 862 (1993). When a violation of K.S.A. 75-4351 is not involved, the resolution of a consent to search issue depends on whether the consent was made voluntarily and knowingly. 18 Kan. App. 2d at 508. Rosas' argument that an interpreter must be appointed in this context is without merit. We must determine only whether Rosas understood he was giving Officer Padron consent to search his person.

Failure to provide an interpreter during an interrogation of a criminal arrestee is a per se violation of K.S.A. 75-4351(e). *State v. Zuniga*, 237 Kan. 788, 790-92, 703 P.2d 805 (1985). However, the

*Zuniga* court held that a violation of the statute does not require suppression of the statement or vitiate the validity of the waiver of *Miranda* rights. 237 Kan. at 791. In *Zuniga*, the court held:

"The purpose behind K.S.A. 75-4351(e) is to ensure that there is clear communication between one who is in custody and the officers who are questioning him. The statute does not state a rule of evidence. Whether or not an interpreter is appointed and is present at the taking of the statement, the trial court must still determine whether an in-custody statement was freely, voluntarily, and knowingly given, with knowledge of the *Miranda* rights. That determination must be made upon the totality of the circumstances." 237 Kan. at 791-92.

The Kansas Supreme Court has consistently reaffirmed its position in subsequent cases involving a foreign speaking criminal arrestee and the application of K.S.A. 75-4351(e). *State v. Salcido-Corral*, 262 Kan. 392, 406-07, 940 P.2d 11 (1997); *State v. Nguyen*, 251 Kan. 69, 74-75, 833 P.2d 937 (1992); *State v. Garcia*, 243 Kan. 662, 674-75, 763 P.2d 585 (1988). As in consent to search, the only issue that matters regarding waiver of *Miranda* rights is voluntariness. In other words, the court simply must determine whether Rosas understood his *Miranda* rights given to him in English so that he knowingly waived those rights when he gave his statements to Officer Padron in Spanish.

The test for voluntariness for a consent to search "is a question of fact to be decided in light of all the attendant circumstances by the trier of facts, and will not be overturned on appeal unless clearly erroneous." *State v. Kriegh*, 23 Kan. App. 2d 935, 938, 937 P.2d 453 (1997). The Supreme Court has stated virtually the same inquiry applies to waiver of *Miranda* rights:

"Voluntariness of a confession is determined from the totality of the circumstances, and where a trial court conducts a full prehearing on the admissibility of extra-judicial statements by the accused, determines the statements were freely and voluntarily given, and admits the statements into evidence at trial, appellate courts accept that determination if supported by substantial competent evidence and do not attempt to reweigh the evidence." *State v. McCorkendale*, 267 Kan. 263, 270-71, 979 P.2d 1239 (1999).

Here, a full hearing was conducted on the matters of Rosas' consent and waiver of his *Miranda* rights. As to Rosas' ability to understand Officer Padron and effectively consent to the search

and knowingly waive his *Miranda* rights, the trial court concluded there was no communication problem between Rosas and Padron. The trial court based its determination primarily upon the testimony of Officer Padron. Padron testified Rosas understood him while speaking English or Spanish, and Rosas told him he, Rosas, spoke English well. In addition, the trial court noticed that while Rosas testified, he understood some of the questions before they were translated into Spanish. Finally, Rosas testified he had graduated from an English-speaking high school in Wichita without the aid of an interpreter and had conversed with Officer Padron in both languages. There is substantial competent evidence to support the trial court's finding that Rosas' consent was given freely, and he knowingly and voluntarily waived his *Miranda* rights.

Rosas argues the police should not be able to switch back and forth from English and the accused's primary language as a matter of law. He also argues the standard for proving voluntariness should be raised to clear and convincing evidence in the context of judging whether consent or waiver of *Miranda* is voluntary for arrestees whose primary language is one other than English. Rosas cites no case law to support these novel assertions. Certainly, the manner of the interrogation is a factor, but in Kansas, the test for voluntariness remains the "totality of the circumstances." *McCorkendale*, 267 Kan. at 270. Nevertheless, this court must follow the Supreme Court's ruling that voluntariness is judged by the preponderance of the evidence standard of proof. *State v. Johnson*, 253 Kan. 356, 362, 856 P.2d 134 (1993).

Rosas' claim for an interpreter is considerably less than convincing. His consent to the search and his waiver of his *Miranda* rights were knowingly and voluntarily made.

Rosas' argument regarding the application of Article 36(1)(b) of the Vienna Convention to his motion to suppress evidence presents questions of law for us to decide by a de novo standard of review. See *Rexroat*, 266 Kan. at 53.

Rosas contends the police officers' failure to advise him of his right to consult the Mexican Consulate is in violation of the Vienna Convention and requires automatic suppression of all evidence.

The pertinent portion of this treaty relied upon by Rosas is at Article 36(1)(b) which states:

"[I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph." Vienna Convention, 21 U.S.T. at 101.

The introduction of the treaty states in pertinent part:

"Believing that an international convention on consular relations, privileges and immunities would also contribute to the development of friendly relations among nations, irrespective of their differing constitutional and social systems,

"Realizing that the purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective states." Vienna Convention, 21 U.S.T. at 79.

The Vienna Convention is a 79-article, multilateral treaty to which both the United States and Mexico are signatories. *U.S. v. Lombera-Camorlinga*, 206 F.3d 882, 884 (9th Cir. 2000). The treaty requires an arresting government to notify a foreign national who has been arrested of his right to contact his consul. *Faulder v. Johnson*, 81 F.3d 515, 520 (5th Cir.), *cert. denied* 519 U.S. 995 (1996).

Rosas states he is a citizen of Mexico and a legal, permanent resident of the United States. The State argues that Rosas failed to provide adequate evidence that he is a foreign national. Though the only evidence of Rosas' citizenship is his own word, the issue was not challenged or argued by the State at the suppression hearing or trial. An issue not presented to the trial court will not be considered for the first time on appeal. *State v. Smith*, 268 Kan. 222, 242-43, 993 P.2d 1213 (1999). Since the State failed to argue Rosas' citizenship to the trial court, the question is not properly before this court.

As a Mexican national, it is clear from the record that he was not informed of his right to contact his consulate as required by Article 36(1)(b). Therefore, the issue becomes whether suppression of the

evidence is the appropriate remedy for a violation of the Vienna Convention.

This court addressed Article 36(1)(b) of the Vienna Convention for the first time in *State v. Ameen*, 27 Kan. App. 2d 181, 183-84, 1 P.3d 330 (2000). The defendant in *Ameen* argued he was denied his right to effective counsel because he was not informed of his rights to contact his consulate pursuant to Article 36(1)(b). The defendant was procedurally barred from raising a claim under the treaty because he failed to raise the issue at trial. 27 Kan. App. 2d at 184. However, in dicta, the court stated: "Courts dealing with this question have concluded a violation of Article 36(1)(b) will not result in a reversal unless the defendant has shown prejudice." 27 Kan. App. 2d at 184.

Although inapplicable to the facts in the case, *Ameen* urged prosecutors to become familiar with the provisions of the treaty, specifically Article 36, and adhere to them. 27 Kan. App. 2d at 184. Though not cited in *Ameen*, that decision echoes dicta found in *Breard v. Greene*, 523 U.S. 371, 140 L. Ed. 2d 529, 118 S. Ct. 1352 (1998), which states that Article 36(1)(b) of the Vienna Convention "arguably" creates individual rights to consular assistance following arrest, 523 U.S. at 376, even while commenting that it is a highly speculative debate as to whether a criminal defendant was prejudiced by not following the Vienna Convention, 523 U.S. at 377. Dictum may be respected, but it is not controlling in subsequent case law when the precise point is being argued and considered by the court. *Dickey v. Daughety*, 21 Kan. App. 2d 655, 659, 905 P.2d 697 (1995), *aff'd* 260 Kan. 12, 917 P.2d 889 (1996).

Approximately 6 weeks prior to this court's decision in *Ameen*, the Supreme Court considered the issue of whether notice requirements of the Vienna Convention were complied with when the trial court granted guardianship to an aunt of a minor with foreign national status. *In re L.A.M.*, 268 Kan. 448, 449, 996 P.2d 839 (2000). Though not dealing with Article 36(1)(b), *L.A.M.* held that the notice requirements of the treaty were sufficiently complied with to satisfy the purpose and intent of the Vienna Convention. The court specified the purpose and intent of the treaty in its opinion: "The focus of the treaty is, therefore, on promoting peaceful in-

ternational relations and not on specific rights of individual citizens." 268 Kan. at 449-50.

The dicta in *Ameen* and *L.A.M.* appear to be conflicting. *L.A.M.* appears to indicate that suppression of evidence would be an inappropriate remedy because individual rights cannot be enforced due to a violation of the Vienna Convention, but the court was not considering Article 36(1)(b). *Ameen* appears to advance the theory that a violation of the Vienna Convention creates an individual's right to have evidence suppressed when shown proof of prejudice to the defendant. The court was considering Article 36(1)(b), but consideration of the suppression issue was not necessary to the court's decision. Kansas case law is unclear as to the remedy for a violation of the Vienna Convention, Article 36(1)(b).

Rosas relies on *U. S. v. Lombera-Camorlinga,* 170 F.3d 1241, 1242-43 (9th Cir. 1999), in which a panel of the court held Article 36 of the Vienna Convention creates individual rights enforceable in the courts of the United States. That panel further held that a defendant's post-arrest statements made before being advised of this right are inadmissible in a subsequent criminal prosecution if the defendant can show prejudice from the lack of notification. 170 F.3d at 1243-44.

Rosas failed to mention that this case was overturned by an *en banc* review of the case in *U.S. v. Lombera-Camorlinga,* 206 F.3d 882, 883-84, which held suppression was not an appropriate remedy for a violation of the Vienna Convention, even if the Article 36(1)(b) provision conferred individual rights. As its basis for the ruling, the court stated:

"In arguing that the statements should be suppressed, appellants urge us to make the unwarranted assumption that the treaty was intended to serve the same purposes as *Miranda* in enforcing the rights to counsel and against self-incrimination in the post-arrest context. Yet, the treaty does not link the required consular notification in any way to the commencement of police interrogation. Nor does the treaty, as *Miranda* does, require law enforcement officials to cease interrogation once the arrestee invokes his right. See *Miranda,* 384 U.S. at 444-45, 86 S. Ct. 1602. Furthermore, while the rights to counsel and against self-incrimination are secured under the Fifth and Sixth Amendments to our own Constitution and are essential to our criminal justice system, they are by no means universally recognized or enforced. See *Miranda,* 384 U.S. at 442-43, 86 S. Ct. 1602 (stating

that the Fifth Amendment right against self-incrimination 'had its origin in a protest against the inquisitorial . . . methods of interrogating accused persons, which have long obtained in the continental system') . . . There is no reason to think the drafters of the Vienna Convention had these uniquely American rights in mind, especially given the fact that even the United States Supreme Court did not require Fifth and Sixth Amendment post-arrest warnings until it decided *Miranda* in 1966, three years after the treaty was drafted." 206 F.3d at 886.

We find the above rationale of *Lombera-Camorlinga* to be convincing that a violation of the treaty does not restrain or eclipse our judicial safeguards which maintain fairness, integrity, and justice.

We agree with the *Ameen* court that prosecutors should be aware of the Vienna Convention and inform foreign national defendants of their rights under Article 36(1)(b). We do, however, disapprove of any language in *Ameen* which states or suggests that suppression of evidence is an appropriate remedy for a violation of the Vienna Convention. As stated in the introduction to the treaty, its purpose "is not to benefit individuals but to ensure the efficient performance of functions by consular posts." 21 U.S.T. at 79.

Rosas might well have received some comfort from the consul, but he had full knowledge of his rights when *Mirandized* by the officers. He received the total protection of the laws of Kansas and of the United States.

Affirmed.