No. 57,439

STATE OF KANSAS, *Appellee*, v. ARMONDO B. ZUNIGA, *Appellant.*

(703 P.2d 805)

Opinion filed July 26, 1985.

*Terry Pullman,* deputy public defender, argued the cause, and *Kathy Vetter,* appellate counsel, Sedgwick County Public Defender, was with him on the brief for appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Kimberly*

*Gee Vines*, assistant district attorney, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Armondo B. Zuniga, from his conviction of rape, by jury trial in the Sedgwick District Court, and from the sentence imposed. He raises five issues, contending that his post-arrest statement to a detective should have been suppressed because the State did not comply with K.S.A. 75-4351; that the trial court erred in excluding from evidence the results of a pregnancy test; that the court erred in limiting defendant's cross-examination of the victim; that the evidence was not sufficient to support the verdict; and that the trial court erred in sentencing defendant under K.S.A. 21-4618. Since the sufficiency of the evidence is challenged, we turn first to the facts.

Defendant went to trial on an information charging him with aggravated burglary and rape. The jury convicted him only of the latter offense. The victim, T. H., testified that she was living with her two children, both toddlers. On June 11, 1984, the victim was talking with her mother on the telephone while the television news was on, between 10:00 and 10:30 p.m. The children were asleep. It was a hot night, and she had left the front door open and the screen door closed but unlatched. When she hung up the telephone, she saw the defendant standing inside the front door. She asked him what he wanted, and he replied that he had some things he wanted to talk about. He moved toward her and pinned her to the couch. She escaped, ran to the bedroom and went for the phone. The defendant grabbed her around the waist and pulled her back to the living room. He placed her on the floor, pinned her arms above her head with one hand, and removed her clothing with the other. As he started to remove his own clothes, she got up and ran to the bedroom. Once again, he followed, grabbed her, and pulled her back into the living room. He raped her on the living room floor. Afterward, she went into the bathroom, locked the door, and stayed there until the defendant left. As soon as she heard the screen door shut, she came out of the bathroom, dialed the 911 emergency number and reported the rape. The police took her to St. Joseph's Hospital, where she was examined. She told the police that she knew the man who attacked her as Arthur Rodriquez or Armondo Zuniga.

About a week later, while the victim was away from home and her mother was babysitting, the defendant came to the house and asked if T. H. was there. When informed that she was not, he left. He was driving a van. When the victim arrived home, her mother told her that the defendant had been there asking for her. When the mother left, both women saw the defendant's van parked nearby; the victim called the police. They arrived and arrested the defendant. He denied that he had been to the home asking for the victim earlier that evening. When questioned by a police detective, defendant first denied that he had had sexual relations with the victim on June 11; later, he admitted that he had had intercourse with the victim on that occasion, but claimed that it was consensual.

Defendant testified in his own behalf. He stated that while he was attending a ball game, a girl whose name he did not know came to him and told him that T. H. wanted to talk to him. A few days later he went to her home. He knocked on the door and she admitted him. They sat on the couch and talked; she told him about her divorce. She later took him into the bedroom and showed him her divorce papers. They returned to the living room, started kissing, removed their clothing, and eventually had consensual sex. He was in the neighborhood at the time of his arrest to return a ball glove to a friend whose name he did not know. He did not stop at the victim's home that evening prior to his arrest.

At the conclusion of the trial, the jury returned a verdict finding the defendant guilty of rape but not guilty of aggravated burglary. This appeal followed.

The first issue is whether the trial court erred in refusing to suppress the defendant's statement to the police detective. Defendant contends that it should have been suppressed because the police did not comply with the provisions of K.S.A. 75-4351. The applicable portions of that statute read as follows:

"A qualified interpreter shall be appointed in the following cases for persons whose primary language is one other than English, or who are deaf or mute or both  .  .  .  .

.  .  .  .

   "(e) when such person is arrested for an alleged violation of a criminal law of the state or any city ordinance. Such appointment shall be made prior to any attempt to interrogate or take a statement from such persons."

The following sections, of which this statute was originally a

part, provide for the appointment and compensation of interpreters, state the qualifications of interpreters, provide for an oath of the interpreters, and define their duties.

K.S.A. 75-4351 and the sections that follow it provide the machinery for the selection, appointment and compensation of interpreters under various circumstances. They authorize the expenditure of public funds for that purpose. The statutes do not contain any sanctions for violations thereof. Suppression is a severe sanction, much criticized. While the purpose is to encourage peace officers to follow statutes or constitutional guidelines, it may prevent otherwise proper evidence from being introduced in the case at hand.

There is no question here but that the statute was not complied with, and the trial court so found. When the statement was challenged, the trial court held a *Jackson v. Denno* hearing, out of the presence of the jury, to determine the admissibility of the statement. There was evidence that the defendant, a native of Mexico, had been in this country seven or eight years. He spoke English to the victim. He apparently had no difficulty in understanding the speech of the officers and the directions given to him by them at the time of his arrest. Detective Clark first filled out a personal history sheet. All of the conversation was in English. Defendant never indicated that he could not understand. Both the arresting officers and Detective Clark read a statement of the *Miranda* rights to the defendant, and he appeared to understand those. When Detective Clark first questioned the defendant about the alleged rape, he denied that he had had intercourse with the victim. Later, he admitted that they had had intercourse, but stated that it was with her consent. Detective Clark wrote the statement out, read it to the defendant, and asked him if he wished to add, delete or change anything, and the defendant responded that he did not. The trial court held that the statement was admissible, finding that it was knowingly and voluntarily made with a knowing and voluntary waiver of the right not to speak.

The purpose behind K.S.A. 75-4351(e) is to ensure that there is clear communication between one who is in custody and the officers who are questioning him. The statute does not state a rule of evidence. Whether or not an interpreter is appointed and is present at the taking of the statement, the trial court must still

determine whether an in-custody statement was freely, voluntarily and knowingly given, with knowledge of the *Miranda* rights. That determination must be based upon the totality of the circumstances. In *State v. Newfield*, 229 Kan. 347, 357, 623 P.2d 1349 (1981), we said:

"In determining the voluntariness of a confession, it is to be viewed in light of the totality of circumstances, including the following factors: (1) The duration and manner of interrogation; (2) the accused's ability upon request to communicate with the outside world; (3) the accused's age, intellect and background; and (4) the fairness of the officers in conducting the interrogation. Essential to the inquiry is the determination that the statement was the product of the free and independent will of the accused. If the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary. *State v. Prince*, 227 Kan. 137, 144, 605 P.2d 563 (1980); *State v. Watkins*, 219 Kan. 81, 97, 547 P.2d 810 (1976); *State v. Creekmore*, 208 Kan. at 934. The burden of proving the statement was voluntary rests with the State. *State v. Kanive*, 221 Kan. at 35."

Here, the trial court no doubt considered the factors enumerated in *Newfield* and in addition considered the defendant's fluency in the English language. The rule guiding our consideration of these matters is set forth in *State v. Brown*, 235 Kan. 688, Syl. ¶ 3 681 P.2d 1071 (1984). It reads:

"When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely, voluntarily and knowingly given, and admits the statement into evidence at the trial, the appellate court should accept that determination if it is supported by substantial competent evidence."

The trial court below conducted a full hearing on the matter and its determination is supported by substantial, competent evidence. We conclude that the trial court did not abuse its discretion or otherwise err in admitting in evidence Zuniga's statement to the officers.

The second issue is whether the trial court erred in excluding the results of a pregnancy test of the victim which was performed as a part of the rape kit test in the early morning hours of June 12, 1984. Prior to trial, the defendant indicated that he wished to call a physician who would testify that the victim was pregnant at the time of the rape. His stated purpose was not to call attention to the victim's sexual activities in the past, but to establish a possible motivation for her to fabricate the rape story and thus to attack her credibility. He proffered the testimony of the physician who examined the victim and performed routine tests,

including a pregnancy test on June 12. The results on this test came back positive. The victim's husband was in the Kansas State Industrial Reformatory and was to be released in four months. He and the defendant were not on good terms and the husband was claimed to have a violent temper. Defendant claimed that the evidence of the victim's pregnancy would provide a motive for her to fabricate the rape story and would turn her husband's ire from her to her attacker. The trial court held that this was merely an attempt to evade the rape shield statute, K.S.A. 1984 Supp. 21-3525, and excluded the evidence.

There was also evidence that on December 22, 1983, the victim underwent a tubal ligation and that though a viable pregnancy would not be impossible, it would be very rare. The ninety-five-pound victim appeared as a witness some three months after the rape, and there is nothing in the record to suggest that she was noticeably pregnant at that time.

In *State v. Stellwagen*, 232 Kan. 744, 659 P.2d 167 (1983), we discussed the rape shield statute, then codified as K.S.A. 60-447a (Weeks), and said:

"In the rape shield act the legislature sent a clear message to the courts that a rape victim's prior sexual activity is generally inadmissible since prior sexual activity, even with the accused, does not of itself imply consent to the act complained of. In saying this the legislature was attempting to further the strong state interest in protecting the rape victim. The act withstood constitutional challenge in *State v. Blue*, 225 Kan. 576, 580, 592 P.2d 897 (1979), and *In re Nichols*, 2 Kan. App. 2d 431, 580 P.2d 1370, *rev. denied* 225 Kan. 844 (1978).

"K.S.A. 60-447a provides a procedure to assist the trial court in determining relevancy of a contention of a rape victim's prior sexual activity. On review the trial court's ruling should stand absent a showing of abuse of discretion. *In re Nichols*, at 433. We have held discretion is abused only when no reasonable person would take the position adopted by the trial court." 232 Kan. at 747.

The defense in this case was consent. Would evidence that the victim was pregnant at the time of the alleged rape tend to show that the intercourse was consensual? We think not. Further, since the victim had undergone a tubal ligation for the purpose of preventing future pregnancies, the victim would have had no reason to believe she was pregnant at the time the offense was committed. We cannot say that no reasonable person would take the position adopted by the trial court and thus we conclude that the court did not abuse its discretion in excluding the proffered evidence.

The third issue is closely related to the second. The defendant

contends that the trial court abused its discretion in not allowing the defendant to introduce evidence of the victim's husband's violent temper during her cross-examination. The trial court sustained an objection to a question about the husband's ill temper during the victim's cross-examination. Later, during the presentation of the defendant's case, defendant was permitted to introduce evidence that the husband was in jail, that he had a bad temper, and that the defendant was afraid of him. Thus, any error of the trial court in ruling upon the objection to the cross-examination was cured when the evidence was ultimately admitted. Even though the evidence was not presented in the precise manner in which the defendant wanted to introduce it, we find no error.

For his fourth issue, defendant contends that the evidence is not sufficient to support his conviction. Where this issue is raised, our standard for review has been stated and applied many times. In *State v. Myatt*, 237 Kan. 17, Syl. ¶ 7, 697 P.2d 836 (1985), we said:

"In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained."

The defendant relies upon *State v. Matlock*, 233 Kan. 1, 660 P.2d 945 (1983), to support his appellate argument on this issue. In that case, however, the facts were completely different from those here before us. The victim in the *Matlock* case not only made no outcry in a house in which several adults were present, but she did not disclose the alleged rape until some fifteen months after the occurrence. We do not find the *Matlock* case relevant or persuasive here.

We have already discussed the victim's testimony as to her version of what happened on the night in question. In addition, there was evidence that defendant had come over to her house previously, had driven by her house repeatedly, and had come to the house asking for her on the night of his arrest. Upon considering all of the evidence, we conclude that a rational factfinder could have found the defendant guilty of rape beyond a reason-

able doubt and that the evidence was fully sufficient to support the conviction.

Finally, the defendant contends that the trial court erred in imposing sentence. The defendant contends that the trial court imposed sentence pursuant to K.S.A. 21-4618. That statute clearly provides that probation or suspension of sentence should not be granted to any defendant who is convicted of the commission of certain crimes *"in which the defendant used any firearm in the commission thereof."* Rape is one of the crimes included within the ambit of that statute.

The trial court made no specific mention of K.S.A. 21-4618 at the time of sentencing, but the record is clear that the trial court believed that statute to be applicable and to prohibit the granting of parole upon a conviction for rape. At the time of the imposition of sentence, the court said:

"THE COURT: All right, Mr. Zuniga, there are two ways to interpret the statute concerning a conviction of rape. The way I interpret it, it's required, parole is not possible. I do that because of the other offenses listed with it that have no possibility of parole. If the High Court should interpret that statute differently, I wouldn't feel it's appropriate to have probation in a case of rape, anyway. It's true, and the reason it's going to be the minimum sentence, is not only because there is no prior offense, but it's because it wasn't accompanied by — although this is an aggravatingly enough event — it wasn't accompanied by inflicting severe physical injury, and that's not to overlook the personal harm that comes to people that have their bodies violated.

"So the sentence is that you be committed to the custody of the Secretary of Corrections for not less than five nor more than twenty years, and that you pay the costs of this action. . . .

. . . .

"MR. PULLMAN [defense counsel]: I have a couple of questions to make sure my understanding is correct. It's your interpretation of the rape statute —

"THE COURT: It's real clear. I will say it again. I don't think it's legally possible for a person to be paroled after a conviction of rape, but if the Supreme Court, in its wisdom, says that because of the other offenses included within that statute, if the Supreme Court should interpret it otherwise, my ruling is that it's not an appropriate case for probation. And, yes, there is no question that I don't think that you can put someone on probation for rape legally, but also I don't think that it's appropriate.

. . . .

"MISS SWEGLE [the prosecutor]: Your Honor, excuse me, if I may, I would inquire of the Court what particular statute you are referring to when you have indicated that you feel rape is not a parole offense?

"THE COURT: The same one that denies you to put people on probation in other matters. I thought all District Attorneys had read that statute.

"MISS SWEGLE: I have, Your Honor. My opinion of what that statute said, I think, is different than Your Honor's.

"THE COURT: That's the very reason that I stated in the record that I thought it was impossible that the legislature could have put those other crimes in the statute as crimes for which parole could not be granted, or probation, and included rape in the statute. I have heard it said by another Assistant District Attorney that you had to have a gun in the rape. Of course, it was a mandatory penal, and I think that flies in the face of the language of the statute. I just think that you are stealing something by force by putting people in fear. And I don't think the legislature intended to have a strong-armed robbery or a robbery of a filling station be a more serious crime than robbing someone of their personal integrity. And I don't think it's an accident that the legislature put rape in that statute.

"There isn't any question what statute we are talking about."

From this record it is apparent that the trial court was reluctant to answer counsel's direct question; however, there can be no question but that the court was referring to K.S.A. 21-4618.

That statute was originally enacted as chapter 168, section 1, of the 1976 Laws of Kansas. It then provided simply that probation should not be granted to any defendant who was convicted of the commission of any crime set out in article 34, chapter 21, of the Kansas Statutes Annotated, in which the defendant used any firearm in the commission thereof. The legislature later amended that statute by adding the crimes of rape and aggravated sodomy to the article 34 offenses. The statute clearly prohibits probation only when a firearm is used in the perpetration of the described crimes. The trial court was in error in construing the statute to prohibit probation in cases of rape when a firearm is not used.

The sentence as pronounced and incorporated in the journal entry, however, makes no reference to K.S.A. 21-4618, and the copy of the journal entry delivered to the correctional institution should likewise make no mention of that statute. The trial court, however, stated clearly that under the facts of this case probation would not be proper, that incarceration was required, and that probation would not be granted even if the court had authority (which it did) to grant it. The trial court properly interpreted the applicable statutes fixing the penalty for rape, and the court imposed the minimum sentence for the class of felony of which the defendant was convicted. Under the circumstances, the trial court's misinterpretation of an inapplicable statute did not vitiate the sentencing procedure, did not constitute prejudicial error, and does not require the setting aside of the sentence imposed. We find no reversible error.

The judgment and the sentence imposed are affirmed.

HOLMES, J., concurring in the result.

SCHROEDER, C.J., dissenting.