No. 109,005

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MAGDALENO GARCIA-BARRON,
*Appellant*.

SYLLABUS BY THE COURT

1.

When reviewing a denial of a defendant's motion to suppress evidence, the appellate court engages in a two-step analysis. First, the appellate court must determine whether the district court's findings are supported by substantial competent evidence. Then, the appellate court reviews the district court's legal conclusion applying a de novo standard.

2.

Whether a defendant's statement to law enforcement is voluntary is a question of law over which the appellate court exercises unlimited review.

3.

When a word is not defined in a statute, the word should be given its common and ordinary meaning.

4.

The word "interpreter," as used in K.S.A. 75-4351 *et seq.*, means a person who serves as a conduit for communication between an English speaking person and a non-

English speaking person by accurately repeating and translating the words spoken by one of the persons into the language spoken by the other person.

5.

A Spanish speaking police officer questioning a Spanish speaking criminal suspect in Spanish is not acting as an interpreter within the meaning of that word as used in K.S.A. 75-4351 *et seq.*

6.

The State's failure to appoint an interpreter pursuant to K.S.A. 75-4351 *et seq.* does not, standing alone, render a defendant's statement involuntary. It is one factor that a court should consider when determining, from the totality of the circumstances, whether a defendant's statement to law enforcement was freely, voluntarily, and knowingly given.

7.

Even when the State has failed to comply with the mandates of K.S.A. 75-4351 *et seq.*, suppression of a defendant's confession is not available as a remedy if that confession was freely, knowingly, and voluntarily made after a valid waiver of the defendant's *Miranda* rights.

8.

A defendant's *Miranda* waiver is not rendered involuntary simply because law enforcement refuses to disclose the reason for the investigation until after the defendant waives his or her *Miranda* rights.

Appeal from Sedgwick District Court; CLARK V. OWENS II, judge. Opinion filed July 03, 2014. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., ATCHESON and STEGALL, JJ.

STEGALL, J.: In November 2009, Sergeant Clay Germany of the Wichita Police Department received a call from a local high school indicating that a student had reported a sexual assault. Germany interviewed the victim, T.M.G., who told the officer she was sexually assaulted at her neighbors' home by a man who was staying there. Germany contacted the homeowners, who identified the suspect as Magdaleno Garcia-Barron.

After making contact with the suspect at the neighbors' residence, Germany discovered that Garcia-Barron spoke only Spanish. Germany requested assistance from Sergeant Jose Salcido, a Spanish speaking police officer. Salcido arrived at the residence and introduced himself and Germany to Garcia-Barron. Salcido told Garcia-Barron, who was "[v]ery cooperative, very friendly," that there was an incident the police needed to discuss with him. Salcido informed Garcia-Barron that they would need to have the conversation at the state office building and Garcia-Barron agreed to go with the police. Once at the state office building, the officers placed Garcia-Barron in an interview room. Prior to the interview, Germany and Salcido discussed the facts of the case between themselves. Salcido asked to conduct the interview alone, reasoning that it would be easier to "directly ask the questions and get the answers [himself]."

Salcido then presented Garcia-Barron with a Spanish-language *Miranda* warning and waiver form. Salcido went through each section of the *Miranda* waiver with Garcia-Barron in Spanish and Garcia-Barron initialed each section, indicating that he

3

understood. As this was happening, Garcia-Barron told Salcido several times that he did not know why he was there. Salcido told Garcia-Barron that he could not discuss the details of the case with Garcia-Barron until the *Miranda* waiver form was signed. Garcia-Barron then signed the waiver form. Salcido proceeded with questioning and Garcia-Barron confessed to having had sexual intercourse with T.M.G., stating that he believed her to be 16 or 17 years old. T.M.G. was, in fact, 15 years old at the time of the incident.

The State charged Garcia-Barron with one count of rape and, in the alternative, one count of aggravated indecent liberties with a child older than 14 but less than 16. Garcia-Barron filed a motion to suppress the statements he had made to Salcido. Garcia-Barron argued that because the State had failed to appoint an interpreter prior to questioning, his confession was involuntary and should be suppressed. Following an evidentiary hearing, the district court ruled that Salcido "clearly meets the qualifications [to be an interpreter] set out by the statute" and "is qualified to act as an interpreter for this case." The district court denied the motion to suppress, finding Garcia-Barron's waiver of his *Miranda* rights and his confession to have been knowingly and voluntarily made. The State then dismissed the rape charge and Garcia-Barron was found guilty of aggravated indecent liberties with a child based upon stipulated facts. He was sentenced to a controlling term of 59 months in prison. Garcia-Barron now appeals.

On appeal, Garcia-Barron reprises the arguments he made to the district court. He claims that the district court erred when it declined to suppress his confession to Salcido. Garcia-Barron argues that his statements were not voluntarily and knowingly made because: (1) Salcido was not an appointed interpreter pursuant to K.S.A. 75-4351 *et seq.*; (2) Salcido was not statutorily qualified to be an interpreter because he had an interest in the outcome of the interview; and (3) Salcido made revealing the reason for the interrogation contingent on Garcia-Barron signing the *Miranda* waiver. On review, we engage in a two-step analysis of a denial of a defendant's motion to suppress evidence. "Without reweighing the evidence, the appellate court reviews the district court's findings

4

to determine whether they are supported by substantial competent evidence. The appellate court then reviews the ultimate legal conclusion regarding the suppression of evidence using a de novo standard." *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

Garcia-Barron frames the bulk of his argument on appeal around the State's alleged violation of K.S.A. 75-4351, which Garcia-Barron claims required the State to appoint an interpreter for him. Indeed, this is the prism through which the district court analyzed Garcia-Barron's motion to suppress. Kansas law requires the appointment of interpreters for non-English speakers at various points in the criminal justice process, including prior to any interrogation by law enforcement. See K.S.A. 75-4351(e) ("A qualified interpreter shall be appointed . . . (e) prior to any attempt to interrogate or take a statement from a person who is arrested for an alleged violation of a criminal law of the state."). Interpreters must meet specific criteria in order to be qualified to serve. See K.S.A. 75-4353. The failure to appoint an interpreter during a police interrogation does not, however, necessarily render a confession involuntary.

> "The purpose behind K.S.A. 75-4351(e) is to ensure that there is clear communication between one who is in custody and the officers who are questioning him. The statute does not state a rule of evidence. Whether or not an interpreter is appointed and is present at the taking of the statement, the trial court must still determine whether an in-custody statement was freely, voluntarily and knowingly given, with knowledge of the *Miranda* rights. That determination must be based upon the totality of the circumstances." *State v. Zuniga*, 237 Kan. 788, 791-92, 703 P.2d 805 (1985).

In *Zuniga*, despite the State's failure to appoint an interpreter under the statute, the Kansas Supreme Court found Zuniga's confession was voluntarily given under the totality of the circumstances. 237 Kan. at 791-92; see *State v. Nguyen*, 281 Kan. 702, 723, 133 P.3d 1259 (2006). Whether a confession is voluntary is a question of law over which we exercise unlimited review. 281 Kan. 702 Syl. ¶ 15.

As a preliminary matter, we must determine whether Salcido was acting as an interpreter pursuant to K.S.A. 75-4351 *et seq.* Statutory interpretation involves questions of law over which we exercise unlimited review. *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013). Because the word "interpreter" is not defined in K.S.A. 75-4351 *et seq.*, we must give the word its ordinary meaning. See *Roda v. Williams*, 195 Kan. 507, Syl. ¶ 3, 407 P.2d 471 (1965) (words in common use contained within a statute are to be given their natural and ordinary meaning); see also *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) (words not defined in a statute should be given ordinary or common meaning).

The common and ordinary meaning of "interpreter" is a "person who translates, esp. orally, from one language to another; esp., a person who is sworn at a trial to accurately translate the testimony of a witness who is deaf or who speaks a foreign language." Black's Law Dictionary 895 (9th ed. 2009). Another dictionary defines an "interpreter" as one who "translates orally for parties conversing in different tongues." Webster's Third New International Dictionary Unabridged 1182 (1993). Finally, "interpreter" can simply mean a person "who translates orally from one language to another." American Heritage Dictionary 917 (5th ed. 2011). These definitions are consistent with the statutory context. For example, in order to qualify as an interpreter under Kansas law, a person must be able to "accurately repeat and translate the statement" of the non-English speaker. K.S.A. 75-4353(b). Similarly, the statute describes an interpreter as a "conduit" whose duty is to "relay a communication between a person who can speak English and a person whose primary language is one other than English." K.S.A. 75-4354(b).

Because Salcido and Garcia-Barron were the only two people involved in their conversation, it is logically impossible for Salcido to have been acting as an interpreter. He was not a conduit for communication between Garcia-Barron and a third person and

6

he was not translating words from one language to another. In fact, excepting the specific language employed (Spanish as opposed to English), there was no material difference between this interrogation and thousands of others that occur between law enforcement officers and suspects. Salcido was conducting the interview directly with Garcia-Barron in a language they both understood well. Salcido was born into a Spanish-speaking family and spoke the language exclusively until age 9. He was himself an immigrant from Mexico and was knowledgeable regarding cultural factors that can create nuances of meaning in that language. Additionally, Salcido has a bachelor's degree in Spanish. Salcido did not have to be appointed as a qualified interpreter pursuant to K.S.A. 75-4351 before he could interrogate Garcia-Barron.  Because we find that Salcido was not acting as an interpreter, we need not address Garcia-Barron's contention that Salcido was not statutorily qualified to serve as an interpreter.

This conclusion leaves unanswered whether Garcia-Barron was entitled to have an interpreter appointed for his benefit prior to the interrogation. For purposes of our analysis, we will assume that he was entitled to have a qualified third-party interpreter present. See K.S.A. 75-4351(e). As seen above, however, the State's failure to comply with the requirements of K.S.A. 75-4351(e), standing alone, does not necessarily render the defendant's statements involuntary. We must still determine whether Garcia-Barron's "statement was freely, voluntarily and knowingly given, with knowledge of [his] *Miranda* rights. That determination must be based upon the totality of the circumstances." *Zuniga*, 237 Kan. at 791-92.

Upon review of the record, we are satisfied that there is ample substantial evidence to support the district court's finding that Garcia-Barron's statements were knowingly and voluntarily made after a full waiver of his *Miranda* rights.

> "When a defendant claims his or her confession was not voluntary, the
> prosecution has the burden of proving by a preponderance of the evidence that it was

7

voluntary. The essential inquiry is whether the statement was the product of an accused's free and independent will. The court looks at the totality of the circumstances surrounding the confession and determines its voluntariness by considering the following nonexclusive factors: (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language." *State v. Stone*, 291 Kan. 13, Syl. ¶ 8, 237 P.3d 1229 (2010).

The interview itself was short, lasting only 10 minutes from the *Miranda* waiver to the end of the interview. Garcia-Barron was not handcuffed. He did not ask for anything or give any indication of discomfort or duress. Salcido clearly took Garcia-Barron through the *Miranda* waiver line by line, informing him of his right to remain silent, his right to an attorney, and that he could stop the questioning at any moment. Salcido described the defendant as easy to talk to, calling Garcia-Barron "one of the nicest [suspects] I have ever dealt with." While Garcia-Barron did not understand English and was from a different culture, Salcido's fluency with the language and culture bridged any potential gaps. There is no evidence in the record that Garcia-Barron was unable to understand Salcido or communicate fluently with him.

Garcia-Barron argues that Salcido's refusal to tell Garcia-Barron the reason for the interview until after a *Miranda* waiver was signed rendered his waiver involuntary. The United States Supreme Court has directly addressed this argument holding that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 577, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987). This court has previously applied *Spring*, affirming the denial of a motion to suppress when the defendant's sole claim was that he was not informed of the reason for arrest before his *Miranda* waiver. *State v. Stout*, No. 99, 608, 2009 WL 1499160, at *6 (Kan. App. 2009) (unpublished opinion). The failure of

police to inform Garcia-Barron of the reason for the investigation until after the *Miranda* waiver was signed did not render Garcia-Barron's waiver involuntary.

"K.S.A. 75-4351 and the sections that follow it . . . do not contain any sanctions for violations thereof." *Zuniga*, 237 Kan. at 791. Therefore, even if the State failed to appoint a qualified interpreter as Garcia-Barron claims, suppression of his confession is not available as a remedy when that confession was otherwise properly obtained. In this case, it was properly obtained. Despite the fact that the district court ruled that Salcido was a qualified interpreter pursuant to K.S.A. 75-4351 *et seq.*, we can and do affirm the district court's denial of Garcia-Barron's motion to suppress as being right for the wrong reason. See *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005). There is substantial evidence in the record to support the district court's conclusion that Garcia-Barron's confession was freely, knowingly, and voluntarily made after a valid waiver of his *Miranda* rights.

Affirmed.