NOT DESIGNATED FOR PUBLICATION

No. 114,439

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

OSIEL OROZCO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA and JEFFREY E. GOERING, judge. Opinion filed December 23, 2016. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., STANDRIDGE, J., and HEBERT, S.J.

*Per Curiam*: Osiel Orozco appeals from his conviction of rape after a bench trial. He argues that his confession should have been suppressed because he was not provided a statutorily certified interpreter during the police interview. He further argues that there was insufficient evidence upon which to base his conviction because his confession was uncorroborated and untrustworthy.

We find no reversible error and affirm Orozco's conviction.

1

*Factual and Procedural Background*

In April 2014, 12-year-old J.G.C. gave a note to her friend, Q.W., in the hallway at school. In the note, J.G.C. said she had been raped 3 days ago "on Friday." She wrote that the assault had occurred when a man came up in front of her house and dragged her into an abandoned house next door. Q.W. gave the note to a teacher who, in turn, directed the note to school administrators who called the Wichita Police Department.

Detective David Wertz, who was assigned to the Missing or Exploited Children's Unit, interviewed J.G.C. at school.  J.G.C. at first gave Detective Wertz confusing information, but Detective Wertz testified both at a motion to suppress hearing and the subsequent bench trial that eventually J.G.C. told him that it was another friend's father with whom she had sex. From school records, Detective Wertz determined that Orozco was that friend's father. Based on his interview with J.G.C., Detective Wertz alerted other officers that he wanted to speak with Orozco.

Orozco was picked up by Wichita Police Department Officer Michael Linnehan in front of his house and was transported to meet Detective Wertz at a Wichita Police Department office referred to as the EMCU. Detective Wertz, who was not in full street uniform, took Orozco's personal history and thought there might be an issue with communication. In response to Detective Wertz's inquiry, Orozco, a native of Guatemala, indicated that he would like to have someone present who spoke Spanish.  Detective Wertz requested Officer Linnehan, who was a Wichita Police Department Spanish translator, remain and assist with the interview. Officer Linnehan read Orozco his *Miranda* rights in Spanish, referring to a standard Wichita Police Department form which he had on his phone. Orozco acknowledged his understanding of those rights.

The 2-hour interview with Orozco was recorded and ultimately transcribed, including Officer Linnehan's Spanish translations. Orozco initially denied that he had sex

with J.G.C. and expressed concerns regarding his immigration status and for the potential reaction of his wife. He eventually admitted that he did have sex with J.G.C. on the back porch of an abandoned apartment between his apartment and the apartment where J.G.C. resided with her family. Orozco claimed that 12-year-old J.G.C. had initiated the sexual encounter, but he provided a fairly graphic description of the events which led to his penis entering J.G.C. Based on his admissions, Orozco was charged with rape.

Prior to his trial, Orozco filed approximately 14-15 pro se motions, some accompanied by elaborate and lengthy legal memoranda. The court referred these filings to the attention of Orozco's appointed defense counsel. Pertinent to this appeal, in December 2014, counsel filed two motions. One motion sought to suppress any evidence obtained from the police interview, alleging that Orozco had not been provided with a statutorily certified interpreter and, thus, there was no assurance of the accuracy of the translations. The second motion requested the district court make a determination of admissibility of any statements "pursuant to the principles set forth in *Jackson v. Denno,* 378 U.S. 368[, 84 S. Ct. 1774, 12 L. Ed. 2d 908] (1964)."

In January 2015, a hearing was held at which the district court considered both motions. At that hearing, Officer Linnehan testified he had taken Spanish every year from middle school through high school and he had spoken conversational Spanish while supervising 65-70 employees from various Spanish-speaking countries in his previous employment with a hotel company. He further testified that during his police training he was tested and certified by the Wichita Police Department as a Spanish language speaker and he spoke Spanish on a daily basis while on his patrol beat.

The district court admitted and reviewed the transcript of the interview and heard testimony from Detective Wertz and Officer Linnehan regarding the conduct of the interview. At the conclusion of the hearing, the district court first differentiated between the *Jackson v. Denno* issues and the failure to provide a certified interpreter. The court

3

then made specific findings and a detailed analysis in which it noted the "fairness of the officers," and concluded: "[O]verall, the [*Jackson v. Denno*] factors as applied in this case indicate the statement was freely and voluntarily given under the circumstances."

Shifting gears to the suppression question, the court reviewed Officer Linnehan's background and experiences and noted he was not a court-certified interpreter. The court opined the failure to provide a court-certified interpreter "in itself is not fatal to the question of voluntariness or involuntariness" and concluded that, under the totality of circumstances, there was no basis to suppress the confession made during the interview.

Orozco proceeded to a bench trial before a different district court judge in April 2015. (We note that one of Orozco's pro se motions had requested a bench trial.) Orozco's counsel renewed his objection to the admission of any evidence derived from the interview. The trial judge heard much of the same testimony regarding Officer Lennihan's background, experience, and participation in the interview as had been presented to the motion judge. The trial court again denied the objection, adopting the pretrial rulings, and finding that Officer Linnehan was fluent enough in Spanish to communicate in a reliable manner. The trial judge concluded that he "could not find that the statement was given in a manner that was unreliable or in a manner that would raise questions as to whether or not Mr. Orozco was coerced into saying something he really didn't want to say."

Based on the testimony and exhibits presented at the bench trial, the trial court found Orozco guilty of rape and, after the presentence investigation and report, imposed the presumptive sentence of lifetime imprisonment. Orozco timely appealed the conviction.

*The Court Did Not Err By Denying the Motion to Suppress*

In his first issue on appeal, Orozco argues that because he was not provided with a statutorily required interpreter during his interrogation, his confession should have been suppressed.

In reviewing the decision or ruling on a motion to suppress a confession, the appellate court first reviews the factual findings under a substantial competent evidence standard, then reviews the ultimate legal conclusion de novo. In so doing, the appellate court does not reweigh the evidence, assess the credibility of witnesses, or resolve conflicting evidence. *State v. Dern,* 303 Kan. 384, 392, 362 P.3d 566 (2015).

Orozco focuses his appellate argument solely upon K.S.A. 75-4351, which provides:

> "A qualified interpreter shall be appointed . . . for persons whose primary language is on other than English . . . ;
>
> . . . .
>
> "(e) prior to any attempt to interrogate or take a statement from a person who is arrested for an alleged violation of a criminal law of the state."

The statutory requirements for appointment and certification are set forth in K.S.A. 75-4352 and K.S.A. 75-4353. K.S.A. 75-4354(a) requires that before acting as an interpreter the interpreter must take an oath.

In the instant case, the district court properly determined that, despite his background and fluency in Spanish, Officer Linnehan was not a statutorily qualified interpreter. However, this finding does not end our inquiry. Orozco acknowledges caselaw holding that the failure to provide an interpreter is not, of itself, a reason for suppressing a confession if the statement was otherwise given freely, knowingly, and

5

voluntarily in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966).

In *State v. Zuniga*, 237 Kan. 788, 791-92, 703 P.2d 805 (1985), it was clear that the State did not comply with K.S.A. 75-4351(e), but the Kansas Supreme Court refused to use that as a reason to suppress the defendant's statements. The court held that K.S.A. 75-4351(e) was not a rule of evidence and "[w]hether or not an interpreter is appointed and is present at the taking of the statement, the trial court must still determine whether an in-custody statement was freely, voluntarily and knowingly given, with knowledge of *Miranda* rights. That determination is based upon the totality of the circumstances." 237 Kan. at 791-92. Thus, the Kansas Supreme Court made clear that a violation of K.S.A. 75-4351 is merely a factor to consider when judging whether a defendant understood what was happening. 237 Kan. at 791-92;  see *State v. Garcia*, 243 Kan. 662, Syl. ¶ 9, 763 P.2d 585 (1988) (holding that failure of "officers to have an interpreter in attendance pursuant to K.S.A. 75-4351[e] does not vitiate the statement if it was freely, voluntarily, knowingly, and understandingly made with full knowledge of the *Miranda* rights"); *State v. Garcia-Barron*, 50 Kan. App. 2d 500, 505, 329 P.3d 1247 (2014) (holding that, while the defendant was "entitled to have a qualified third-party interpreter present . . . the State's failure to comply with the requirements of K.S.A. 75-4351[e], standing alone, does not necessarily render the defendant's statements involuntary"), *rev. denied* 302 Kan. 1014 (2015).

Orozco, however, argues that such interpretation "strips any meaning from K.S.A. 75-[4351], rendering it surplusage," and further argues:  "If violation of K.S.A. 75-4351 does not have a remedy, it is meaningless." Orozco is essentially suggesting that this court abandon precedent and offer our own interpretation of the statute and its effect. This, of course, we cannot do. We are duty bound to follow established Kansas Supreme Court precedent. *State v. Meyer,* 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015).

Accordingly, we reject Orozco's contention that the failure to provide a statutorily certified interpreter, standing alone, should require suppression. In focusing his argument solely upon the statute, Orozco does not address or contest the district court's analysis and rulings on his *Jackson v. Denno* motion finding that, under the totality of the circumstances, Orozco's statement was freely, knowingly, and voluntarily given. As such, he has waived or abandoned any argument that any other factor would weigh in favor of a finding that his confession should be suppressed. See *State v. Williams,* 303 Kan. 750, 758, 368 P.3d 1065 (2016).

The district court's ruling denying suppression of the confession is affirmed.

*The Evidence is Sufficient to Support the District Court's Verdict*

In his second issue on appeal, Orozco argues that since the district court relied solely upon his uncorroborated and unreliable confession, the record contains insufficient evidence to sustain the rape conviction. Orozco cites the rule of corpus delecti.

The evolution of the rule of corpus delecti is discussed in *Dern,* 303 Kan. 362. Most commonly, the corpus delecti rule was applied to prevent the conviction of someone solely on the basis of a confession, and courts have traditionally required some evidence, even if circumstantial, corroborating the confession of a defendant. 303 Kan. at 401-02. In Kansas, the traditional rule of corpus delecti may be bypassed by finding the confession to be trustworthy. 303 Kan. at 410. The trustworthiness of the confession will depend on the totality of circumstances, including, *inter alia,* a consideration of independent corroboration of the details or facts contained in the confession and the overall fairness of the exchange with law enforcement when the confession was made. 303 Kan. at 410-11.

Here, the district court, in ruling on Orozco's *Jackson v. Denno* motion and finding the confession to be freely, voluntarily, and knowingly made, specifically noted the "fairness of the officers." As noted above, these findings have not been challenged on appeal.

Orozco's appellate brief and argument would apparently have us understand that the bench trial was a fairly perfunctory proceeding in which, over the objection from Orozco, the district court merely admitted the proffered transcript of the interrogation containing the confession and then summarily found Orozco guilty. In fact, Orozco boldly asserts in his brief that the "[S]tate did not present any other physical or testimonial evidence regarding the alleged offense." The record clearly establishes that this simply is not correct.

At the time of the trial, the young victim, J.G.C., was residing out of state with her father's side of the family and, thus, was not called by the State to testify. However, the State did call her friend, Q.W., to identify the note J.G.C. gave him in which she stated that she was raped in an abandoned house 3 days prior. This note was received into evidence without any objection or limitation being raised by Orozco. The State also presented the testimony of Bart Flickinger, the teacher who had discovered the note, and discussed its origin with Q.W. before turning it over to school administrators. Thus, the fact of a criminal injury—rape—and the location and time were admitted into evidence independently of Orozco's confession.

Detective Wertz testified at the trial consistent with his testimony previously given at the motion to suppress hearing he had obtained information from J.G.C. that another friend's father was the perpetrator. Detective Wertz further testified that a review of school records disclosed that friend's father was Orozco. This testimony was again received into evidence without objection from Orozco and independently establishes the identity of the alleged perpetrator of the criminal act.

8

Officer Linnehan testified he had picked up Orozco in front of his home, and the evidence is uncontroverted that Orozco's home was just across the street from the apartment where J.G.C. resided with her family. J.G.C.'s mother, B.M., was also called by the State and, among other details, verified the age of J.G.C. and established the location of the abandoned apartment where the rape occurred. In his confessional interview, Orozco provided details about the neighborhood and acknowledged that his daughter and J.G.C. were playmates. He also described the abandoned house where he admitted to having sex with J.G.C.

The district court admitted the transcript of the interview and confession into evidence over the objection of Orozco. Orozco's objection again centered primarily on Officer Linnehan's lack of qualification and fluency to accurately translate the interview. The motion judge rejected this argument, and the trial judge, in addition to making his own detailed findings, adopted the pretrial rulings and determined that Officer Linnehan's participation was adequate to render the confession trustworthy.

We, therefore, reject the suggestion that the trial court relied solely upon an uncorroborated confession to convict Orozco. The court had before it sufficient independent testimonial and documentary evidence to support its judgment that Orozco was guilty of rape as admitted in his confession.

Affirmed.

* * *

MALONE, C.J., dissenting: I respectfully dissent from the majority's conclusion that the district court did not err by denying Osiel Orozco's pretrial motion to suppress his statement to the police. I would find that the State failed to meet its burden of proving that the confession was voluntary under the totality of the circumstances.

9

Orozco's rape conviction is unusual because the alleged victim, J.G.C., never testified either at the preliminary hearing or at the trial. The only substantial evidence supporting Orozco's conviction and his sentence of life imprisonment was his recorded statement to Detective David Wertz and a handwritten note from J.G.C. that was admitted into evidence without any hearsay objection. Thus, it is important for the courts to scrutinize whether Orozco's statement to the police was properly admitted into evidence.

Orozco's primary objection to the admission of his recorded statement was that the police had failed to provide a certified interpreter for the interview. K.S.A. 75-4351(e) provides that a qualified interpreter shall be appointed for persons whose primary language is other than English "prior to any attempt to interrogate or take a statement from a person who is arrested for an alleged violation of a criminal law of the state." Interpreters must fulfill certain statutory requirements, and they cannot be "interested in the outcome of the proceeding." K.S.A. 75-4353(a).

The district court properly determined that despite Officer Michael Linnehan's background and fluency in Spanish, he was not a statutorily qualified interpreter. But as the majority opinion points out, the State's failure to comply with the requirements of K.S.A. 75-4351(e), standing alone, does not necessarily render the defendant's statements involuntary. "Whether or not an interpreter is appointed and is present at the taking of the statement, the trial court must still determine whether an in-custody statement was freely, voluntarily and knowingly given, with knowledge of *Miranda* rights. That determination is *based upon the totality of the circumstances*." (Emphasis added.) *State v. Zuniga*, 237 Kan. 788, 791-92, 703 P.2d 805 (1985); see also *State v. Garcia*, 243 Kan. 662, Syl. ¶ 9, 763 P.2d 585 (1988) (holding that failure of "officers to have an interpreter in attendance pursuant to K.S.A. 75-4351[e] does not vitiate the statement if it was freely, voluntarily, knowingly, and understandingly made with full knowledge of the *Miranda* rights").

10

In district court, Orozco filed a motion to suppress his statement on the ground that it was not freely and voluntarily given pursuant to the principles set forth in *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). On appeal, Orozco has not reasserted his argument that his statement was involuntary under the totality of the circumstances. As such, the majority finds that Orozco has waived or abandoned this argument.

I would not find that this court is precluded from considering the voluntariness of Orozco's confession. Our Supreme Court has made it clear that a violation of K.S.A. 75-4351(e), standing alone, does not result in the suppression of a statement, but instead courts must determine whether the statement was freely and voluntarily given under the totality of the circumstances. See *Zuniga*, 237 Kan. at 791-92; *Garcia*, 243 Kan. 662, Syl. ¶ 9. In other words, the law requires this court to determine whether Orozco's statement was freely and voluntarily given under the totality of the circumstances even though Orozco has failed to address this specific issue in his appeal.

In reviewing the district court's ruling on a motion to suppress a confession, the appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard. However, the ultimate legal conclusion drawn from those facts is reviewed de novo. *State v. Lewis*, 299 Kan. 828, 835, 326 P.3d 387 (2014). Moreover, the State bears the burden of proving by a preponderance of the evidence that a confession was voluntary. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015).

Here, the district court did not resolve any factual disputes at the hearing on the motion to suppress Orozco's statement. Wertz and Linnehan both testified at the hearing, but their testimony essentially was unchallenged. Orozco's statement was recorded, transcribed, and admitted into evidence at the hearing. Thus, we review the district court's ultimate legal conclusion that Orozco's statement was voluntary without any deference to

11

the district court's findings; we are allowed to substitute our judgment for the district court's judgment on whether the statement was voluntary.

As previously stated, the State has the burden to prove that Orozco's statement was voluntary, *i.e.*, that it was the product of his free and independent will. *Dern*, 303 Kan. at 392. In determining whether the State has met this burden, the court looks at the totality of the circumstances surrounding the confession and considers the following nonexclusive factors:  (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language. *State v. Woods*, 301 Kan. 852, 867, 348 P.3d 583 (2015).

At the hearing on the motion to suppress held by Judge Christopher Magana, both the prosecutor and defense counsel urged the district court to review the transcript in order to make a ruling on whether Orozco's statement was voluntary. After hearing the testimony and the closing arguments, the district court proceeded to make a ruling from the bench without taking any recess to read the transcript. The judge acknowledged on the record that although he had not "reviewed every page of the transcript," he had had an opportunity to review "a number of various pages" of the transcript, apparently while Wertz and Linnehan were testifying.

In my view, the transcript raises concerns about the voluntariness of Orozco's statement under the totality of the circumstances. Orozco is a native of Guatemala who works in Kansas as a sheetrock finisher. He indicated that he had 1 year of formal education in Guatemala and that he never attended high school. At the beginning of the interview, Orozco requested a Spanish interpreter "'cause I don't understand everything." Orozco initially denied having any type of improper contact with J.G.C., but Wertz continued to press the issue saying "Come on friend, tell me the truth."

12

The most concerning part of the interview is the fact that Orozco kept bringing up his immigration status and concerns about being deported. Midway through the interview, Orozco stated, "I have problems with immigration." In response, Wertz stated, "I don't want to send you back to Guatemala. . . . I don't want to deport you." Orozco continued to express his fear of deportation and stated, "I don't want any more problems." Linnehan responded by telling Orozco that he would not "have problems" as long as he told the truth about his involvement with J.G.C. Linnehan, who was supposed to be acting as the interpreter, then told Orozco, "Tell me the truth friend." It was at this point that Orozco completely changed his story and admitted to having sex with J.G.C.

For the most part, Wertz and Linnehan treated Orozco fairly throughout the interview which lasted about 2 hours. But upon considering the totality of the circumstances, *i.e.*, the language barrier, the lack of a certified translator, Orozco's lack of education, and his concerns about deportation, I am left with the uneasy feeling that Orozco's statement was involuntary and the result of his fear of deportation. This is a close case, but the burden of proving that the confession is admissible is on the prosecution. See K.S.A. 22-3215(4). In a case such as this one, I would find that the State failed to meet its burden of proving that Orozco's confession was voluntary. Accordingly, I conclude that the district court erred in denying Orozco's pretrial motion to suppress.